New York Mail and Newspaper Transportation Company, Respondent, *v.* John L. Shea, Individually and as Commissioner of Bridges of the City of New York, Appellant.

*New York and Brooklyn Bridge — use thereof for pneumatic tubes.*

Under the statute by which the construction of the Brooklyn Bridge was changed from a private enterprise to a public work of the two cities of New York and Brooklyn, and which vested all the powers of the directors of the private corporation in the bridge trustees whose appointment was provided for by that act, such trustees may, in the exercise of the authority which had formerly belonged to the directors of the private corporation, to grant private privileges which in no manner interfered with or obstructed the public use of the bridge, grant to a corporation created by special statute (Chap. 164 of the Laws of 1893), and authorized to operate pneumatic tubes for the speedy transmission of mails, etc., within and between cities of the State of New York, the privilege of maintaining its tube line upon that structure, it not appearing that such tube line will, in any way, obstruct public travel on the bridge, endanger its safety or interfere with its proper maintenance.

Such corporation cannot, however, appropriate the use of the bridge without the authority of the officers in control of it, nor can such officers in anywise limit the continuous power and duty of their successors, to regulate, manage and maintain the bridge for the greatest efficiency in the paramount purpose of its construction — that of public travel; and if, at any time, the plans of the authorities in control of the bridge made in good faith require a change in the location of the tube line, or even a total abrogation of this privilege, the tube line corporation must submit thereto, its rights being subject to the governmental or legislative power of the bridge authorities over the public use of the bridge.

APPEAL by the defendant, John L. Shea, individually and as commissioner of bridges of the city of New York, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 8th day of February, 1898, granting an injunction restraining him from interfering with the construction of the plaintiff's pneumatic tubes across the New York and Brooklyn Bridge.

*Almet F. Jenks, Assistant Corporation Counsel,* for the appellant.

*Selden Bacon,* for the respondent.

CULLEN, J.:

The plaintiff was incorporated by chapter 164 of the Laws of 1893, which states, in section 1: "The general purpose of such corporation shall be, and it is hereby authorized and empowered to construct, maintain and operate pneumatic tubes and other devices for the speedy transmission and delivery of the mails, newspapers and parcels within and between the cities of this State." By section 5 of the statute the corporation was empowered, without further authority of law or ordinance, "To locate, to construct, to maintain, and to operate tubes, not to exceed three feet in diameter, between the central post offices and the branch post offices, and newspaper offices and postal stations in said cities of this State, by such route or routes as shall be determined by said corporation." The plaintiff is about to establish a tube line of eight inches in diameter between the post office in Brooklyn and that in New York. In 1897, by two contracts, made with the late board of trustees of the New York and Brooklyn Bridge, it obtained the privilege for a term of years of maintaining the tube line across the bridge. By the statute consolidating the two cities the board of trustees has been abolished, and all its powers are now vested in the defendant. The plaintiff commenced the construction of its tube line since consolidation, and was stopped in its work by the defendant, on the ground that the action of the board of trustees was without authority in law.

The first claim of the plaintiff is, that by virtue of its statutory franchise it had the right to lay its tubes along the bridge without further authority or consent from the officers in control of that structure. I think this proposition cannot be sustained. "The general principle that land once taken and appropriated as a public use, pursuant to law, under the right of eminent domain, cannot, under general laws and without special authority from the Legislature, be appropriated to a different public use, is well established." (*Prospect Park & Coney Island R. R. Co.* v. *Williamson*, 91 N. Y. 552; *Matter of City of Buffalo*, 68 id. 167.) It is true that the grant of the plaintiff's franchise is by a special law, and not by a general statute; but the grant itself (if it includes the right to enter upon streets and highways) is of so general a character as to fall within the reason of the rule laid down. It would be unreasonable to suppose that the Legislature intended to confer, by a general grant of power, the

right to enter upon so exceptional a structure as the Brooklyn Bridge without the permission of the public officers to whom the maintenance and care of the bridge were confided. The right of the plaintiff to lay its tube line upon the bridge must, therefore, be found, if at all, in the action of the trustees of the bridge.

The learned counsel for the appellant insists that the action of the trustees was beyond their powers and illegal. It must first be observed that the trustees did not assume to grant any franchise to the plaintiff in the proper sense of that term. The plaintiff's franchise proceeded from the act of the Legislature, and the contract with the trustees merely gave the plaintiff permission to enter the bridge in the exercise of that franchise. There is no statute conferring in express terms upon the trustees of the bridge power to contract with private parties for the use of any part of the public property held as part of or in connection with the bridge structure, except that of 1897, with reference to railroads. The general rule of law is, that municipal corporations cannot, without express statutory authority, alienate or dispose of property of a public nature in violation of the trust upon which it is held. (2 Dillon Mun. Corp. § 575.) Nor can they make a contract "inconsistent with the continuously operative duty to make such by-laws, rules and regulations as the public interest or welfare of the city may require." (*Syracuse Water Co.* v. *City of Syracuse*, 116 N. Y. 167; *Richmond County Gaslight Co.* v. *Middletown*, 59 id. 228.) But it has the implied right to lease or dispose of property, real or personal, of the corporation of a private nature, unless restrained by charter or statute. (2 Dillon Mun. Corp. §§ 575, 580.) In *French* v. *Quincy* (3 Allen, 9) it was held that if a town house contained rooms not wanted, for the time being, for municipal business, the town might let them temporarily, or allow them to be used gratuitously. In *Spaulding* v. *City of Lowell* (23 Pick. 71) it was held that the town might use the second story of a market house, not required for the market, for other purposes. In *Worden* v. *City of New Bedford* (131 Mass. 23) it was held that a city has the right to allow a building, erected for municipal purposes, to be used incidentally for other purposes, either gratuitously or for compensation. In *Bell* v. *City of Platteville* (71 Wis. 139) it was held that a city might lease

the city hall for entertainments. To the same effect, see *Stone* v. *City of Oconomowoc* (Id. 155).

As already stated, the Brooklyn Bridge is a structure of exceptional character. The sole object of its construction was to afford a passage for the public from city to city, the same as in the case of an ordinary street or highway. But for its proper construction it was necessary to acquire the fee of the land over which it passed, and the piers or wharves at the points where it crossed the river. It was also necessary that it should cross the river at an elevation of 135 feet, in order that it might not obstruct navigation. From this it followed that the approaches on the land for a long distance are far above the ordinary buildings. At the land ends of the bridge these approaches consist of a series of arches, which have been converted into storehouses. It thus appears that, as to a substantial part of the land and the structure of the bridge, their exclusive use is not necessary for the proper maintenance of the bridge, and the same could be profitably devoted to private use. Thus, this municipal structure and property has always had two aspects — one, that of public property, the other that of private property. From the time of the construction of the bridge it has been the practice and policy of the trustees to farm out such private privileges as did not interfere with or obstruct its public use. The warehouses under the arches, the buildings under the suspended parts of the superstructure and the piers or wharves along the river have been rented out to private tenants. Privileges of stringing under the bridge proper telephone and telegraph wires have also been given out for compensation. This practice has received the sanction of the Legislature, for, by chapter 563 of the Laws of 1887, the trustees were authorized to regulate the use, by lessees or occupants, of real property held for the purposes of the bridge, and to collect the rents in their own name. By the statute which changed the bridge, the construction of which was originally commenced by a private corporation, into a public work of the two cities of New York and Brooklyn (Chap. 300, Laws of 1875), all the powers of the directors of the corporation were vested in the trustees, whose appointment was provided for by the act. It cannot be denied that the board of directors of the old corporation would have had ample authority to grant these private privileges, which in no manner interfered with or obstructed

SECOND DEPARTMENT, MAY TERM, 1898.                    [Vol. 30.

the public use of the bridge.  In my opinion, the same power was transferred to, and vested in, the trustees.  Certainly, if the authority existed at all, it was in that body, for, by the statute, the trustees were given exclusive control and management of this property and structure.  It is neither asserted in the affidavits on the part of the defendant, nor was it contended for on the argument in his behalf, that the plaintiff's tube line, to any extent, obstructs public travel on the bridge, endangers its safety, or interferes with its proper maintenance.  We think, therefore, it was one of those private privileges, similar to the stringing of the telephone and telegraph wires, or the leasing of the stores, which were within the power of the trustees to grant.

While we have thus asserted our view, that the contract with the plaintiff was valid and binding, we do not mean to be understood as holding that the trustees of the bridge could in any wise limit the continuous power and duty of their successors to regulate, manage and maintain the bridge for the greatest efficiency in the paramount purpose of its construction — that of public travel.  If at any time the plans of the authorities in the control of the bridge, made in good faith, require a change in the location of the plaintiff's tube line or even a total abrogation of its privilege, the plaintiff must submit.  Its contract and all similar contracts must be construed as made subject to what we may term the governmental or legislative power of the bridge authorities over its public use.  But as long as similar privileges are granted and operate in no way to the detriment of the public travel on the bridge, they are properly the subject of contract, and cannot capriciously and unreasonably be taken away.

The order below, however, goes too far.  It restrains the defendant and his deputies from interfering with or obstructing the plaintiff in laying down its tubes in accordance with the plans mentioned and described in the complaint.  It should provide that the plans of the work and the manner of its construction shall be subject to the approval and reasonable regulations of the defendant.

All concurred.

Order modified in accordance with opinion of CULLEN, J.