(47 Misc. Rep. 221.)

INTERBOROUGH RAPID TRANSIT CO. v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County.  May, 1905.)

1. STREET RAILROADS—MUNICIPAL OWNERSHIP—LESSEES—MUNICIPAL CONTROL.
    Rapid Transit Act (Laws 1891, p. 16, c. 4, as amended by Laws 1895,
    p. 894, c. 519) § 30, makes the Interborough Rapid Transit Company city
    property, to be deemed a part of the public streets of the city, for the use
    and enjoyment of the public, on the payment of fares and tolls provided
    for by the board of rapid transit commissioners.  Sections 9 and 34, pp.
    9, 18, of the act, as amended by Laws 1895, pp. 893, 899, c. 519, vest in
    the board of rapid transit commissioners whatever control the city has
    over the possession of the railroad by a lessee thereof from the city.
    Held, that a borough president of the city, acting on a notice signed by a
    superintendent of incumbrances, has no authority to remove advertising
    signs, news stands, and automatic vending machines from the stations
    of the railroad, and his act in threatening so to do may be enjoined.

2. SAME—PRELIMINARY INJUNCTIONS.
    The threatened removal by city officials of news stands, advertising
    signs, etc., from the stations of a rapid transit company, operated under
    lease from the board of rapid transit commissioners, will be tempora-
    rily enjoined until the final determination of the rights of the parties,
    where a substantial revenue is derived by the lessee from the operation
    of such news stands, etc., and the contract of lease and the lease recognize
    the lessee's rights to maintain the same, and the statute under which
    the lease is made is subject to a construction authorizing a lease em-
    powering the lessee to maintain such news stands, etc.

Action by the Interborough Rapid Transit Company against the city
of New York and others.  On motion for injunction pendente lite.
Granted.

George W. Wickersham and De Lancey Nicoll, for plaintiff.
William P. Burr and Royal E. T. Riggs, for defendants.

BISCHOFF, J.  The plaintiff operates the rapid transit railway
under a contract made with its assignor, John B. McDonald, by the
board of rapid transit commissioners acting, so far, in behalf of the city
of New York and in accordance with the authority vested in them
by the rapid transit act.  Laws 1891, p. 3, c. 4, amended by Laws
1892, pp. 158, 1087, cc. 102, 556; Laws 1894, pp. 1125, 1873, cc. 528,
752; Laws 1895, p. 887, c. 519; Laws 1896, p. 715, c. 729; Laws
1900, p. 1349, c. 616; Laws 1901, p. 1423, c. 587; Laws 1902, pp. 1269,
1293, 1299, 1610, cc. 533, 542, 544, 584; Laws 1904, pp. 1364, 1370,
cc. 562, 564.  Agreeably to the scheme of construction and maintenance
provided for by the statute, the railroad, when constructed, was leased
to the operating party, and the plaintiff, in possession under that lease,
has exercised and now exercises control of the tunnel structure, tracks,
and stations which formed the subject of the lease.  In the course
of its enterprise, as operator of this railway, the plaintiff has rented out
spaces for advertising upon the walls of the stations, as well as
privileges for the maintenance of news stands and automatic vend-
ing and weighing machines, with the result that framed advertisements
have been placed upon the walls and stands, and slot machines are
to be found upon or adjacent to the platforms of stations.  Asserting
that the maintenance of these signs, stands, and machines effects an

unlawful incumbrance of the stations, the city, through the borough president, has caused a notice to be served upon the plaintiff, signed by an official described as the superintendent of incumbrances, directing their removal and stating in substance that, unless removed by the plaintiff, the property referred to would be removed and disposed of by the city. To restrain the threatened interference, this action is brought, and the question of the plaintiff's legal right to maintain these signs, stands, and machines upon the stations is presented.

The actual interference threatened is a removal of this property by virtue of the city's power of control over the streets, and, so far, the threatened act might well be enjoined as excessive of the authority of the municipal officials whose intention was expressed in the notice referred to. Concededly, the authority of the borough president, or of the superintendent of incumbrances, to remove private property from the owner's possession, must be confined to causes where the city has control of the place in which the property is placed, and the contention of the defendants is that this railroad is a street or highway within the city, subject, as such, to supervision by the city's officials and to their control in the manner in which it shall be maintained. The rapid transit act (Laws 1891, p. 16, c. 4, as amended by Laws 1895, p. 894, c. 519, § 30) provides that this railroad shall be the city's property, "and shall be and be deemed to be a part of the public streets and highways of said city, to be used and enjoyed by the public upon the payment of such fares and tolls and subject to such reasonable rules and regulations as may be imposed and provided for by the board of rapid transit railroad commissioners in said city. It is elsewhere quite unmistakably provided by this act (sections 9, 34, pp. 9, 18, as amended by Laws 1895, pp. 893, 899, c. 519) that whatever control is reserved to the city over the lessee's possession of the railroad is vested in the board of rapid transit commissioners, and to this extent the characterization of the railroad as a part of the streets and highways of the city is evidently not a characterization for all purposes. Generally, the streets are subject to the control of the municipality through its officers. In this particular instance, the statute, which denominates this railroad a street, limits the general application of the term, and, in view of the peculiar nature of the subject to be controlled, places the control in a specially selected body, acting for the municipality.

The contention that these stations are within the control of the officers having supervision of the streets, generally, involves, equally, the proposition that these officers may exercise control over the maintenance of the tracks between the stations, and this is clearly subversive of the intention to be gathered from the statute, which provides a consistent plan for the construction, maintenance, and supervision of this railway property. In ordinary acceptance, and tested by the conditions out of which the regulations for the control of streets arise, this railroad is not a street, but simply a railroad. It is a highway upon which the public have the right to travel upon payment of a fixed fare, or toll, and, as such, its construction was for a city purpose (Sun Publishing Co. v. Mayor, 152 N. Y. 257, 46 N. E. 499, 37 L. R. A. 788); but it was not essential to the constitutionality of the

statute, which devoted the city's money to this purpose, that any particular, and then existing, ministerial officers of the city should have control of this highway, as an ordinary street. Provision was made for a competent body of agents to exercise the necessary incidental control of the property, in behalf of the city, while the property was in the possession of the city's lessee, and, as I find the meaning of the statute to be, the control to be exercised by these agents—the rapid transit board—is exclusive, so far as the character of this highway, as a street, affects the question.

Apart from this, however, the threatened removal of these signs and other fixtures should, in my opinion, be enjoined until the rights of the plaintiff, under its lease and under the statute, are definitely determined upon the trial of this action, and after a full hearing. The statute, which empowered the board to make the contract for the construction and leasing of the road, is very broad in its scope, and may well be read as authorizing the lease of the property in such a manner as to afford the lessee every benefit which custom attaches to the operation of a railway, and the contract itself recognizes the right of the lessee to maintain advertising signs upon the stations, since the manner in which the advertising matter shall be displayed is regulated by the contract.

The defendants seek to draw the inference that the board did not intend to permit the use of signs, from statements made in the report of that body relative to the mural decoration of the stations; but, if this may be considered, we have the equally public utterance of members of the board that the right to display these signs was discussed with the contracting party and conceded, unwillingly, but of necessity. Upon the question of custom, in the maintenance of railroad property, enough has been shown to support the plaintiff's case prima facie, and custom must enter into the inquiry as an important factor in the determination of the extent of this lessee's incidental powers of dominion over the property which is the subject of the lease. It is made to appear that advertising privileges and the maintenance of news stands afford a very substantial revenue, which is customarily taken into account as a part of the legitimate earnings of railway property, and that the maintenance of news stands, vending and weighing machines, and advertising signs is, as an incident to the operation of railways, practically universal. If this be the fact, as disclosed upon a full hearing, then, presumably, the contract had reference to the custom, and the statute intended the existence of power in the board to contract accordingly, since the maintenance of a railroad, according to modern standards, was to result from the enterprise undertaken. On the other hand, if, as a matter of fact, the plaintiff's exercise of its asserted rights to any extent—as distinguished from acts excessive and unreasonable—would interfere with the actual benefits intended to be secured to the public, then, so far, the custom referred to would not be imported into the contract, because inapplicable under the circumstances of the case.

The true construction of this contract under which the plaintiff is in possession, in relation to what is claimed to be excessive acts of dominion by it, as lessee, must depend, to a material degree, upon

facts to be proven at the trial, and there is apparent ground for the plaintiff's assertion of a legal right in harmony with its acts. I have not now to determine that the plaintiff must surely prevail in the action. It suffices for this motion that a question of gravity is presented, depending upon the construction of the statute and of the contract made by the board of rapid transit commissioners under that statute, with resort to proof available as illustrating the scope and meaning of the act, and the intention of the contracting parties. The right of the city to remove these signs and other property should not be arbitrarily determined by a city officer, by resort to his own interpretation of the statute and of this contract; but, in view of the importance of the question and of the serious financial injury (not readily to be estimated) which would result through the carrying out of the expressed intention to remove this property, if the question of right be ultimately decided favorably to the plaintiff, the interference should be restrained until the issues have been finally determined, and the rights of the parties fixed. Southern Pac. R. Co. v. City of Oakland (C. C.) 58 Fed. 50; Northern Pac. R. Co. v. City of Spokane (C. C.) 52 Fed. 428.

Motion for injunction pendente lite granted.

Motion granted.