(53 Misc. Rep. 126.)

### CITY OF NEW YORK v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Special Term, New York County.   February, 1907.)

STREET RAILROADS—LEASE OF SUBWAY—RIGHTS OF TENANT.

> The city of New York leased a subway to a railroad company, without restriction as to the right of the lessee to maintain in its stations weighing and vending machines.  *Held*, that the lessee had the right to maintain such machines as is the custom of railroads, where they were purposely placed so that their obstructing or interfering with the public was absolutely impossible.

Action by the city of New York against the Interborough Rapid Transit Company.   Judgment for defendant.

G. L. Rives, for plaintiff.
C. A. Gardiner, for defendant.

McCALL, J.   This action was instituted by the board of rapid transit railroad commissioners, in the name of the city of New York, for the purpose of restraining and preventing the maintenance of weighing and vending machines in the stations of the railroad owned by the plaintiff and operated by defendant within the city of New York, which railroad is popularly called the "Subway." The board of rapid transit commissioners is a body duly organized and acting pursuant to the powers conferred upon it by chapter 4, p. 3, of the Laws of 1891, and the acts amendatory thereof, commonly known as the "Rapid Transit Act." That act was passed by the Legislature of this state to comply with the demand of the people of the city of New York for speedy, safe, and reliable transportation, and it authorized the said board to lay out routes for railroads and procure them to be built and operated, if not by private enterprise, then the city itself was empowered to build the railroads and lease them for a term of from 35 to 50 years upon payment of a rental not less than the interest upon the cost of construction and 1 per cent. additional. The railroads, if constructed by the city, were to remain its absolute property and to be deemed a part of its system of public streets and highways, to be used and enjoyed by the public upon the payment of such fares and tolls and subject to such reasonable rules and regulations as might be provided and imposed by the said rapid transit board. Sun Printing & Pub. Ass'n v. Mayor, 152 N. Y. 257, 46 N. E. 499, 37 L. R. A. 788.

Pursuant to the rapid transit act a contract was entered into about the 21st day of February, 1900, with John B. McDonald for the construction of an underground railroad according to the plans and specifications submitted by the said board of rapid transit railroad commissioners, which railroad is now in operation, although the road as now operated was not all included in the contract hereinabove referred to. The contract provided that Mr. McDonald should equip the railroad and lease same from the city on the terms referred to above, and operate it carefully and skillfully according to the highest known standards of railroad operation. On July 10, 1902, Mr. McDonald assigned his contract, so far as it related to the equipment, lease, and operation of the subway, to the defendant company, which has operated the road since its completion about November 1, 1904. The road as operated maintains stations in which it has permitted to be placed automatic weighing machines, by which passengers may ascertain their weight by standing upon a small platform and dropping a coin into a slot in the machine, and also certain vending machines, whereby passengers may obtain chewing gum and candy by inserting a coin in the machine and pressing a lever. The question before this court is whether the city, through its rapid transit board, gave to the defendant the right to maintain these machines in the stations of the subway by the lease of the railroad and its appurtenances. This right is shown upon the trial to be worth $50,000 a year to the defendant, and it is strongly urged by the defendant's counsel that such machines

are incidental to the operation of all railways, and that the lease of the subway to the defendant, being silent upon that subject, carries with it the rights incidental to the enjoyment of the leased property and all rights which plaintiff itself could enjoy, had it operated the railroad instead of leasing it to defendant.  Plaintiff's counsel, on the other hand, has argued with equal persistency that the instrument under which defendant operates the subway is a grant or franchise, which must be most strictly construed against the grantee (citing Ogden v. Jennings, 62 N. Y. 526), and that, the instrument being silent on the question of right to maintain these machines, no such right can be implied.  An application for an injunction pendente lite in this very action was made to my learned colleague, Mr. Justice Bischoff (Interborough R. T. Co. v. City of N. Y., 47 Misc. Rep. 221, 95 N. Y. Supp. 886), wherein he said:

"The statute, which empowered the board to make the contract for the construction and leasing of the road, is very broad in its scope, and may well be read as authorizing the lease of the property in such a manner as to afford the lessee every benefit which custom attaches to the operation of a railway, and the contract itself recognizes the right of the lessee to maintain advertising signs upon the stations, since the manner in which the advertising matter shall be displayed is regulated by the contract.  *  *  *  Upon the question of custom, in the maintenance of railroad property, enough has been shown to support plaintiff's case prima facie, and custom must enter into the inquiry as an important factor in the determination of the extent of this lessee's incidental powers of dominion over the property which is the subject of the lease.  It is made to appear that advertising privileges, and the maintenance of news stands afford a very extensive revenue, which is customarily taken into account as a part of the legitimate earnings of railway property, and that the maintenance of news stands, vending and weighing machines, and advertising signs is, as an incident to the operation of railways, practically universal. If this be the fact, as disclosed upon a full hearing, then presumably the contract had reference to the custom, and the statute intended the existence of power in the board to contract accordingly, since the maintenance of a railroad, according to the modern standards, was to result from the enterprise undertaken."

Upon the trial had it has been demonstrated that these various privileges are incidental to the operation of a road, that they afford a great source of revenue, and their use and maintenance is practically a universal custom.  This court cannot now, in the guise of an action to restrain the maintenance of these machines, reform that contract or make a new one for the parties.  The lease gives the plaintiff no right to re-enter the demised premises, except upon the violation of the terms of the lease by the defendant; and it is clear that, if the defendant were restrained and prevented from maintaining these machines, the plaintiff could not enter upon the subway, maintain the machines, and receive the revenue therefrom.  So that the result of preventing their maintenance would be to deprive the defendant of a large revenue flowing from a perfectly legitimate source and based upon an almost universally established custom, without giving plaintiff any corresponding advantage.  It is true that the defendant is bound to use the demised property as a railroad, but the instrument by which the defendant is in possession is none the less a lease.  It is everywhere referred to as a lease, it partakes of all the qualities of a lease, and plaintiff's position that it is a grant or franchise is untenable.

"A lease for years is a contract between lessor and lessee for the possession and profits of lands and tenements on the one hand and a recompense by rent or other consideration on the other." McAdam, Landl. & Ten., 127. "A grant is an absolute conveyance of property by the sovereign, and that conveyance is only defeasible by eminent domain upon proper compensation." Langdon v. Mayor, 93 N. Y. 129. "A franchise is a special privilege conferred by the government on individuals, which does not belong to the citizens of a country generally by a common right." Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274. "A special franchise is the right granted to a corporation to construct, maintain, or operate in a public highway some structure, intended for public use, which, except for the grant, would be a trespass." People ex rel. Metropolitan St. R. v. Tax Com'rs, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674.

The city has built and now owns a railroad, but it has leased it for a term of 50 years to the defendant. That instrument is not a grant, nor is it a franchise; and it must be interpreted and read according to the rules of construction pertaining to leases. Plaintiff could lease nothing more than it had as landlord. It could not grant a right to the tenant to maintain machines upon the demised premises, unless it could have maintained the machines itself. The plaintiff has assumed upon the trial the position that the board of rapid transit commissioners had the power, as suggested by Mr. Justice Bischoff, to permit the machines, but that, as nothing was said in the contract or lease, that power was not exercised, and so remains in the board to be exercised when defendant makes proper application and compensation. The board then possessed a power that was given it by an act of the Legislature authorizing it to build a railroad, and since it is conceded that it possessed the right to permit the maintenance of these machines in question, it must necessarily have secured that power as an incident to its right to construct the railroad, for the Legislature gave the city no other right. There has never been any serious doubt of the right of the municipality to use its property for purposes other than strictly public purposes so long as the primary public purpose is served. French v. Inhabitants of Quincy, 3 Allen (Mass.) 9. There certain premises were granted to a town upon condition that it should not be used for any other purpose than as a townhouse. The town erected upon the premises a much larger building than was then required for town necessities, and rented parts not so occupied for a tailor shop, clothing shop, bank, apothecary shop, and saloon, and the court held that such use was not violative of the conditions upon which the premises were granted. That decision was followed in other states and in our own courts. The right to so utilize public property was discussed by the Appellate Division in the case of New York Mail & Newspaper Transportation Co. v. Shea, 30 App. Div. 266, 51 N. Y. Supp. 563, where it was held that the city had the right to permit the plaintiff company to carry its tubes for the transportation of mail across the Brooklyn Bridge.

The plaintiff in the case at bar, however, contends that, notwithstanding the power in the plaintiff to so utilize the subway, the defendant has no power to maintain the machines, and that such main-

tenance is ultra vires of the defendant.   While it is true that, in de-
ciding whether any act is beyond the power of the corporation, the
courts must look into the circumstances of each particular case, yet
that doctrine will always be reasonably applied.   The proof shows
that vending and weighing machines are now commonly maintained
in railroad stations and on platforms of the elevated roads and in
ferry terminal houses generally, in the city of New York and else-
where.   The right of the elevated railroad to condemn land was
once questioned, because it permitted its property to be used for other
than railroad purposes by allowing news stands on its stations; and
the Supreme Court declared it to be an extraordinary proposition to
say that the right of a railroad to condemn real estate could be ques-
tioned because it used some of its property for a purpose not strictly
a railroad purpose, but which was a great convenience to passengers.
Matter of Met. El. R. R. Co., 18 N. Y. St. Rep. 134, 2 N. Y. Supp. 278.
A large number of collateral uses of railroad property have been sus-
tained, such as the right to maintain weighing machines (London &
Northwestern R. R. Co. v. Price, L. R. 11 Q. B. D. 485), and a hotel
and summer resort were held to be within the powers of a railroad
(Jacksonville, etc., R. R. Co. v. Hooper, 160 U. S. 514, 16 Sup. Ct.
379, 40 L. Ed. 515), and the right of a ferry to run excursions with
its surplus boats not needed for ferry purposes (Forest v. Manchester
Ry. Co., 30 Beav. 40), and to maintain refreshment stands in stations
(Flanagan v. Great Western R. R. Co., L. R. 7 Eq. 116); and in Brown
v. Winnisimmett Co., 11 Allen (Mass.) 326, the court stated that there
was no rule or principle by which an act creating a corporation for a
certain specific object could be construed as prohibitive of all other
dealings not within the exact scope of its charter, and saying that a
corporation may engage in business incidental to its main business
where it may become necessary, expedient, or profitable in the care
and management of its propery.   It is thus clear that the maintenance
of the machines in question would not be an act ultra vires of either
of the parties hereto, and that, had plaintiff not leased its property to
defendant, it would have had the right to maintain such machines as
incidental to the operation of the subway.   Having leased the road to
the defendant without restriction or reservation as to this right, I am
of the opinion that such right passed to the defendant as an incident
to the enjoyment of the demised property, and that the defendant has
the right to their maintenance so long as it does not interfere with
the careful and skillful operation of the road according to the highest
standard of railroad operation, and does not deprive the public of any
of the rights to which it is entitled.

The plaintiff has failed to show that the placing or maintaining
of these various machines in any way interferes with the public's full
enjoyment of all their rights.   They have failed to establish that same
in any shape constitute an obstruction, or are in any way offensive, or
by their existence on the various stations prove themselves a nuisance
or annoyance.   Quite to the contrary, the proof would establish and
warrant the conclusion that they are purposely placed where obstruc-
tion or interference with the public is absolutely impossible.   They

are availed of by the traveling public as a convenience and privilege, the removal of which would prove a deprivation of, rather than the re-establishment of, their rights. Being, therefore, of the opinion that the lease of the subway by the rapid transit board to the defendant gave to the defendant the right to maintain such machines so long as they do not in any way interfere with the use by the public of the railroad or deprive the public of any right to which it is entitled, judgment must be directed for defendant, with costs.

Judgment for defendant, with costs.