(55 Misc. Rep. 138.)

CITY OF NEW YORK v. INTERBOROUGH RAPID TRANSIT CO. et al.

(Supreme Court, Special Term, New York County. June, 1907.)

MUNICIPAL CORPORATIONS—LEASE OF SUBWAY—RIGHTS OF LESSEE.

The subway in the city of New York being the property of the city, the use thereof by a lessee of the city was limited to railroad purposes, and the use of any of the ducts for the sale and transmission of electric currents for motive power to third parties, whether the owners or operators of connecting or intersecting railways or not, is not one of such uses, and will be restrained by injunction, though the lease contains no express prohibition against it, but has no express grant of such right.

Action by the city of New York against the Interborough Rapid Transit Company and the New York City Interborough Railway Company for an injunction. Judgment for plaintiff.

George L. Reeves and Boardman, Platt & Soley, for plaintiff.
Strong & Cadwalader (George W. Wickersham, of counsel), for defendants.

FITZGERALD, J.   This is an action to restrain the above-named defendant corporations, the former of which now operates the railroad commonly known as the "subway," in the boroughs of Manhattan and the Bronx, in the city of New York, and the latter of which operates a street surface railroad connecting with the "subway" at 180th street, in the borough of Manhattan, the one from furnishing and delivering, and the other from receiving and using, electrical current through certain ducts or masonry chambers built in the wall of said subway, and for an accounting by the defendants for the reasonable value of such current heretofore so furnished and used.

The city is the owner of the railroad property known as the "subway," having constructed the same at the public expense (met by a municipal bond issue of $35,000,000) under a contract with Mr. John B. McDonald, made pursuant to the rapid transit act as it existed in 1900, and consisting of three parts or chapters, and providing, generally, that the contractor should construct and equip the said railroad and put the same in operation, and thereafter use, maintain, and operate it under a lease from the city for a period of 50 years. Equipment was defined as including, not only rolling stock, but power houses and all devices whatsoever used for the generation or transmission of motive power. By chapter 3 of the contract, entitled "The Lease," the city let for said term the railway, terminals, stations, and all other appurtenances, except equipment, for an annual rental equal to the annual interest payable by the city upon the bonds issued to pay for the construction, and, in addition, a further sum based upon percentages provided for in the instrument, payment of which latter sum might be postponed in the discretion of the board of rapid transit commissioners. The lease contains numerous general provisions and covenants, those most material to the issues in this action being briefly: That the railroad should be "of the very best character according to the highest modern standard in respect of safety, speed, and convenience, and in all other respects"; that it would be operated "carefully and skillfully according to the highest known standards of railway operation"; that it might be used for the carriage of freight or express matter, provided that such did not to any extent or in any way interfere with its use for passenger traffic; that no advertisements in the stations or cars were to be permitted which should "interfere with easy identification of stations or otherwise with efficient operation"; that no use should be made of any part of the railroad or its equipment which should to any extent or in any way interfere "with such use to its fullest capacity for passengers"; that all reasonable requirements of the public in respect of frequency and character of its railway service to the full capacity of the road should be met; that the highest regard should be had to the safety of passengers and employés; that the railroad should be kept in repair, and the stations, cars, waiting rooms, and tunnels should be kept clean, in thoroughly good order and condition, lighted, comfortable, and ventilated; and that the railway might

be fully inspected. Provision was also made for the rolling stock, the rate of fare, and for the purpose of equipment and the renewal of the lease at the expiration thereof. The motion power prescribed was electricity or compressed air, with provision, however, for the use, if approved by the board, of any other superior motive power discovered in the development of the art of railway transportation.

After the commencement of the work of construction provision for the operation of the railroad by electricity according to the most modern methods necessitated decided modification of the plans, involving the building of a sufficient number of passageways or chambers in the side walls of the subway to accommodate the ducts or conduits for the transmission of electric current. This occasioned litigation over the question whether such modification constituted a revised plan of construction, which should be the absolute property of the city and for which the city should pay the contractor, or a part of the equipment to be furnished by the contractor. It was finally determined by the Appellate Division of this court that such modification of the work was part of the construction, and not of the equipment of the road. Matter of McDonald, 80 App. Div. 210, 80 N. Y. Supp. 536, affirmed on opinion of court below, McDonald v. Grout, 175 N. Y. 470, 67 N. E. 1085. The additional expense—over $1,000,000—was paid by the city and met by its bond issue, and the interest thereon, with the additional percentages before referred to, constitutes a part of the rental payable by the lessee to the city. In changing the plan of construction a greater number of ducts or passageways in the tunnel walls were constructed than have been required for the operation of the railroad up to the present time; 32, for instance, having been constructed between Dyckman street and 181st street, of which only 8 are required and occupied by conduits carrying electrical current.

Pursuant to section 34 of the rapid transit act (Laws 1894, p. 1880, c. 752), the said contractor assigned the lease part of the contract to the defendant Interborough Rapid Transit Company, which is now operating the railroad. It generates at a central power house owned by it a quantity of electricity, largely in excess of what is now used or may be necessary in the operation of its present railroad or of the extension thereof to Brooklyn. Such electricity is conducted by means of conduits in the city streets to the line of the railroad, and thence through other ducts in and part of the subway to substations belonging to the said defendant, where, its tension having been reduced, it is conveyed through ducts as before to various parts of the railway for the purpose of operating trains and heating, lighting, and ventilating tunnels, stations, and cars. One of such substations is situated near the intersection of Hillside avenue and Dyckman street, whence two electric cables are laid through 2 of the 24 ducts in Broadway, now otherwise unoccupied and not necessary for the present operations of the subway, to 181st street, the point of connection with the street surface railroad operated by the other defendant. By means of those ducts and cables electric current has been and is transmitted to and furnished at that point by the defendant rapid transit company to this other defendant for the operation of the latter's street surface railroad, under a writen agreement providing for an interchange of

traffic between them, and for the future delivery for a valuable consideration of such electric current as may be necessary for the operation of the street surface railroad and may not affect or impair in any way or to any extent the obligations to the city ·assumed by the defendant rapid transit company under its lease of the subway, as above generally stated. One of these defendants, the rapid transit or subway company, is the owner of 55 per cent. of the capital stock of the other defendant, the surface railway company.

It is conceded, as a matter of fact, that the amount of electricity so furnished and to be furnished to the surface railroad can be supplied by the defendant operating the subway without diminishing or affecting the amounts now used in operating the present subway, or likely to be used in operating the extension thereof to Brooklyn. The contract or lease contains no express grant of, and no express prohibition against, the use of the ducts for the transmission and furnishing of electricity to third parties for a valuable consideration; and the question is presented whether the defendant the Interborough Rapid Transit Company has the power to use said ducts for a purpose not expressly or impliedly prohibited by the instrument constituting the contract and lease, and admittedly not affecting its operation of the subway, or whether it can only use such property for such purposes as are plainly or by necessary implication included within that instrument. Considering the nature and the object of the rapid transit act, the rights and obligations and the relations between the state, the city, the board of rapid transit commissioners, and the contractor, created and established thereby, the peculiar nature of the instruments signed by the city's representatives, the rapid transit board, the contractor, and the latter's assignee, into which instruments the said rapid transit act was expressly incorporated, the public character of the demise, and the nature of the covenants to be performed by the contractor or lessee, it must be held that the rules of construction applicable to the case of an ordinary lease of a parcel of land by one party to another, according to which the lessee has the right to the exclusive use of the demised premises for any purpose not prohibited by the lease, are not applicable, but that, on the other hand, the canons of interpretation governing the construction of public grants, privileges, or franchises require that the instruments in question must be construed more favorably to the public and more strongly against the contractor, passing, at the most, no greater rights than are plainly or by necessary implication included therein; that the use by the contractor or lessee of the subway structure, including the said ducts, is limited to railroad purposes, the transportation of persons and freight and express matter, to purposes auxiliary thereto customarily attached to the operation of a railway or reasonably required for the convenience and accommodation of its patrons, the public, or for the proper discharge of its duties to them; and, finally, that the sale and delivery of electric current for motive power to another railroad corporation is not one of such uses or purposes.

The objects of the Legislature in the enactment of the rapid transit act, and of the city of New York in making the contract authorized thereby and incorporating said act, were not to enable the city to favorably invest its money or favorably lease its property then in existence.

They were rather to promote and facilitate the travel of persons and the commerce of the city, which by reason of the geographical situation of the city had become so congested as to necessitate the railway structure authorized by the act and provided for by the contract. Sun Printing & Pub. Ass'n v. Mayor, etc., 152 N. Y. 257, 273, 46 N. E. 499, 37 L. R. A. 788. The right or franchise to use the public streets or highways vested in and could be made only by the Legislature, representing the state. It was not derived from the city or the rapid transit board, but from the state, which constituted the rapid transit board its agent, expressly delegating to that board the power to prescribe the manner and conditions of the exercise of the rights, privileges, and franchises conferred upon the contractor or lessee by the rapid transit act, including, among other things, the rates of fare, character of service, and general rules of operation. Rapid Transit Act, § 35. A direct legislative grant, to the company gratuitously made, based solely upon the service to be rendered to the public, was not made in this case, as had formerly been the custom. . Here the Legislature chose an agent, the rapid transit board, for the exercise of its power and for the accomplishment of its purposes as disclosed in the rapid transit act. People ex rel. Murphy v. Kelly, 76 N. Y. 475, 483. That board, for the state, endeavored to contract directly with individuals and companies representing private capital to construct and operate the railroad, but without success. The city was compelled to construct it to meet the great public need referred to, and in accordance with the authority conferred by, and after compliance with the conditions expressed in, the rapid transit act, it provided for its construction and operation by an instrument in writing, nominally and in fact a contract and a lease, whereby rights and privileges in its streets of the nature of franchises, and necessarily exclusive, were granted to the contractor, not as heretofore, gratuitously, not merely because of services to be rendered the public, but for money compensation expressed in the form of annual rent computed on the cost of construction.

The novelty and magnitude of the enterprise, upon which private capital would not venture under a contract directly with the representatives of the state, necessitated a change in method and compelled the intervention of the city and its credit, and the newly adopted policy of the state required provision for the payment of suitable money compensation for the rights, privileges, and franchises in the public streets. But neither the enforced intervention of the city nor the said provision changed the nature of the rights conferred upon the contractor or lessee, which were of the nature of public franchises, involving the constant performance of service to the public, and to the construction of the terms and effect of which well-established rules apply. Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L. Ed. 773, 938; People ex rel. Third Ave. Railroad Co. v. Newton, 112 N. Y. 396, 19 N. E. 831, 3 L. R. A. 174; Blair v. City of Chicago, 201 U. S. 463, 26 Sup. Ct. 441, 50 L. Ed. 801, where it is said that "one who asserts private rights in public property under grants of the character of those under consideration must, if he would establish them, come prepared to show that they have been conferred in plain terms, for nothing passes by the grant, except it be clearly stated or necessarily implied." The cases

cited by counsel for the defendants, involving ordinary leases of lands between individuals, viz., Baldwin v. Morgan, 43 Hun, 355, Riddle v. Littlefield, 53 N. H. 503, 16 Am. Rep. 388, and Lovell v. Strahan, 145 Mass. 1, 12 N. E. 401, 1 Am. St. Rep. 422, are consequently inapplicable. The first two cases are further distinguished, in that the lessees therein used the portions of the demised premises to advertise the sale of their own wares, for which they evidently leased the main premises, so that the said use was properly and necessarily incident and contributory to the purposes of the lease. Furthermore, all of the covenants to be performed by the lessee or contractor, as above briefly enumerated, indicate that the property was to be used only for railroad purposes.

It is contended that the provision of the contract or lease that the contractor should not "make any use of the railroad or any part of it, or of its equipment, which shall to any extent or in any way interfere with such use to its fullest capacity for passengers," indicates that the property might be used for some purpose other than the mere transportation of passengers, because, as respondent argues in its brief, "this restrictive covenant would have been wholly superfluous, had the contractor not been vested by the lease contract with the right to use the property, not only for the carriage of passengers and freight and express matter, but for such collateral uses as such property is customarily put to by corporations operating a similar class of railroads." This language does not require the construction and effect claimed for it. It is equally consistent with the conclusion that no more was intended than that all the purposes, other than the transportation of passengers and freight and express matter, for which the railroad property might be legally used as above stated, viz., purposes auxiliary to such transportation, customarily attached to the operation of a railroad, or necessarily required for the convenience and accommodation of its patrons, the public, must be subordinated by the contractor to the primary purpose of the railway, viz., its "use to the fullest capacity for passengers." Nor is the case of Interborough R. T. Co. v. City of N. Y., 47 Misc. Rep. 221, 95 N. Y. Supp. 886, authorizing the use of the walls of the tunnel for advertising purposes, authority for the right to the use of the property claimed in this case; for there the court, after indicating that the right to place advertisements on the walls of the tunnel was a benefit which custom attached to the operation of a railway, noted the language of the contract or lease, viz., the contractor should not permit "advertisements in the stations or cars which should interfere with easy identification of stations or otherwise with efficient operation," and properly concluded therefrom that the contract itself recognized the right of the lessee to maintain advertising signs upon the stations, since it regulated the manner in which the advertising matter should be displayed. So, also, the decision of Mr. Justice McCall, of this court (City of N. Y. v. Interborough R. T. Co., 53 Misc. Rep. 126, 104 N. Y. Supp. 157), refusing to enjoin the maintenance of certain automatic weighing and vending machines in the stations of the subway, was based partly upon the fact recognized by the court that their use and maintenance was practically universal custom, commonly accompanying the operation by a railway company of its railway; the

cases cited by the counsel for the defendants holding, in effect, that a corporation may do all acts auxiliary to the corporate business, not only those necessarily implied, but also such as are for convenience and accommodation, provided they be germane to its main objects, and that for all such reasonable purposes, though not embraced in the primary object of the charter, it may use its own corporate property. Lafond v. Deems, 81 N. Y. 515; Swift v. Pacific Mail Steamship Co., 106 N. Y. 217, 12 N. E. 583; Jacksonville, Mayport P. R. Nav. Co. v. Hooper, 160 U. S. 525, 16 Sup. Ct. 379, 40 L. Ed. 515; Starin v. New York, 42 Hun, 555; People ex rel., etc., v. Knight, 67 App. Div. 398, 73 N. Y. Supp. 790; Green Bay & M. Railroad Co. v. Union Steamboat Co., 107 U. S. 109, 2 Sup. Ct. 221, 27 L. Ed. 413; Peirce v. Boston, etc., Railroad Co., 141 Mass. 481, 6 N. E. 96; and Foster v. London, Chatham & Dover Ry. Co., L. R. 1 Q. B. Div. 711 (1895)—are not applicable.

There is a radical distinction between the use by the corporation operating the road or exercising the franchise of the property belonging, not to itself, but to the public, and the beneficial and profitable employment by it of its own property, purchased and owned by it, which would otherwise be idle and unproductive. The case of N. Y. Mail & Transportation Co. v. Shea, 30 App. Div. 266, 51 N. Y. Supp. 563, establishing the right of the trustees of the New York and Brooklyn Bridge, owned by the cities of New York and Brooklyn, to contract with a private corporation for the establishment and maintenance of a pneumatic tube line for the speedy transmission of mails is authority, not on the question of the right of the railroad corporation to use the public property here contended for, but on the authority of the rapid transit board to expressly contract for the use of the ducts in question. And in Brooklyn Heights Railroad Co. v. City of Brooklyn, 152 N. Y. 244, 46 N. E. 509, the right of the corporation to build tracks in streets not named in the certificate of incorporation was sustained because necessary for the public convenience, reasonably essential to a proper discharge of its duties to the public, and fairly implied as a means of the amplest exercise of the powers specifically given which was consistent with the object and purpose of the public grant. Here the many ducts, now unoccupied, were constructed as part of the first or original structure, to anticipate the public needs occasioned by the probable extensions of the subway system, and because of the difficulty, if not impossibility, of constructing them or adding to them after the subway wall was constructed. Indeed, apart from the requirements of future extensions, they may become necessary for the transmission of a motor power superior to electricity which may be disclosed by the future development of the railway art. The use of these ducts for the sale and transmission of electric current for motor power to third parties, whether the owners and operators of connecting or intersecting railroads or not, is a use of the public property contrary to the plain purpose of the rapid transit act, not reasonably contemplated by the parties to the instrument of contract and lease executed thereunder, in no sense a railway use within the rules above stated, and, in so far as the company seeks to charge the cost of the generation and transmission of such electric current

against the sum upon which its indebtedness to the municipality shall be computed, manifestly unjust to the city.

Judgment should therefore be rendered in favor of the plaintiffs for the relief demanded in the complaint, with costs.