PEOPLE ex rel. SWAN v. DOXSEE et al.

(Supreme Court, Appellate Division, Second Department. January 26, 1910.)

1. MUNICIPAL CORPORATIONS (§ 223*)—PROPERTY—CAPACITY TO HOLD.

A municipality may hold property either in its corporate capacity as an ordinary proprietor or solely for the public use.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 616, 622; Dec. Dig. § 223.*]

2. MUNICIPAL CORPORATIONS (§ 719*)—USE OF PUBLIC PROPERTY—PRIVATE USE.

Where a municipality as authorized by Laws 1903, c. 455, purchased a dock for public use, taking title in the name of the trustees of its town lands for the use of the town, these trustees had no power to allow the use of part of the dock to private persons for the conduct of private business.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1532, 1533; Dec. Dig. § 719.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MANDAMUS (§ 148*)—SUFFICIENCY AND PURPOSE OF RELIEF—ACTS OF PUB-
LIC OFFICERS.

A citizen and resident of a municipality may maintain on behalf of all
the public mandamus against municipal officers to compel them to do what
it is their duty to do under the law.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 289; Dec. Dig.
§ 148.*]

4. MANDAMUS (§ 148*)—SUFFICIENCY AND PURPOSE OF RELIEF—ACTS OF PUB-
LIC OFFICERS.

A person who was a freeholder and taxpayer, but not a resident of a
town and a citizen of the state, may maintain mandamus to compel the
trustees of the town lands to remove structures from a public dock on the
ground that they obstruct the public use thereof.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 289; Dec. Dig.
§ 148.*]

Appeal from Special Term, Kings County.

Mandamus by the People, on the relation of Alden S. Swan, against
John L. Doxsee and others to compel defendants, as trustees of the
town lands of the town of Islip, to remove certain obstructions from
a public dock. From an order denying the writ, relator appeals. Re-
versed, and writ granted.

Argued before HIRSCHBERG, P. J., and JENKS, BURR,
THOMAS, and CARR, JJ.

Robert H. Wilson, for appellant.

Willard N. Baylis, for respondents.

CARR, J. By chapter 455, Laws 1903, the town of Islip was au-
thorized to purchase docks at Islip and Bay Shore in said town, and
to acquire sites for and to build docks and bulkheads at Sayville, West
Sayville, Bay Shore, and East Islip, in said town, "for public use."
Both the title of the act, which is deemed indicative of the purpose of
the act, and the body of the act itself, repeatedly declare that the
purpose of the acquisition and maintenance shall be for "the public
use." The act in question provided that the trustees of the town lands
"shall have the charge and supervision of all such docks, bulkheads
and landing places, and the power to prescribe rules and regulations
for the use thereof by the public."

Proceeding under the terms of this act, the town bought at Islip
a dock, commonly known as "Doxsee's dock," for the sum of $10,000,
and took title thereto in the name of the trustees of its town lands, as
prescribed in the act itself. The conveyance by which it took title
contained a habendum clause by which the title was to be held "for-
ever for the use of said town." While the title to this dock was held
privately, a corporation, known as the Live Fish Company, had main-
tained upon it certain structures consisting of a large icehouse, run-
way, and platform by agreement with the then owner. After the town
took title, its trustees of the town lands entered into a lease with the
Live Fish Company granting to that corporation the exclusive use of
those portions of the dock occupied by its structures for a term of 10
years at an annual rental of $100. The dock in question is about 365
feet long and 103 feet wide.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The relator is a freeholder, but not a resident, of the town of Islip. He applied at Special Term for a writ of peremptory mandamus directed to the trustees of the town lands requiring them to remove forthwith from the dock in question the icehouse structure of the Live Fish Company upon the ground that said structure is an unlawful obstruction to the "public use" of the dock. This application was denied by the Special Term by an order which recites that the relator's motion "be, and the same hereby is, in all respects, denied, as a matter of law and not in the exercise of discretion."

The broad question brought up by this appeal is whether a municipality may by leave or license permit property acquired or held by it for "the public use" to be wholly or partly diverted to a possession or use exclusively private without specific legislative authority.

The icehouse erected by the Live Fish Company is devoted entirely and exclusively to its own private use for the storage of ice to enable it to pack its fish in boxes and ship them to the market. The lease in question assumes to grant to the lessee a term apparently beyond the powers of the trustees of the town lands. The question as to the validity of the term of years is, however, not before this court in this proceeding, as this motion must be disposed of as if the Live Fish Company had but a revocable license; for, if the trustees of the town lands could give to the Live Fish Company a revocable license for the purpose above described, this present application for a mandamus to remove the icehouse structure forthwith must fail, because, if they have the right to license, no present duty to remove the structure is shown. The affidavits submitted in opposition to the motion set forth that the icehouse in question does not interfere with the use of the dock by the public generally. Inasmuch as the use of that portion of the dock occupied by the icehouse is conceded to be exclusively private, these allegations mean nothing more than that the remainder of the dock offers sufficient accommodations to the present actual needs of the general public. There is no allegation in the moving papers that the icehouse in question interferes with any present actual demand or necessity of the public use; the theory of the relator being evidently that it constitutes an interference pro tanto with the public right of use of the entire structure.

The learned Special Term filed an opinion, from which it appears that its decision was based upon a conclusion that; unless it appeared that the public's or the relator's actual use of the dock was interfered with by the structure in question, no right to a mandamus was shown. A municipality may hold property either in its corporate capacity as an ordinary proprietor or solely for the public use. Whether it can devote any part of its property, even temporarily, to a private use, depends entirely upon the capacity in which it holds title. New York Mail & Transportation Co. v. Shea, 30 App. Div. 266, 51 N. Y. Supp. 563.

The general rule, as laid down in Meriwether v. Garrett, 102 U. S. at 513 (26 L. Ed. 197), is as follows:

"In its streets, wharves, cemeteries, hospitals, courthouses, and other public building the corporation has no proprietary rights distinct from the trust for the public. It holds them for public use, and to no other use can they be ap-

propriated, without special legislative sanction. It would be a perversion of that trust to apply them to other uses."

That a municipality may not allow private obstructions on, or user of a public street, except within definable temporary limits for the convenience of abutting property, is elementary law. The authorities declaring this rule are too numerous to cite. The most recent one is that of Hatfield v. Straus, 189 N. Y. 208, 82 N. E. 172, wherein it was held that the board of estimate of the city of New York had not the power to authorize an abutting owner to lay a spur railroad track on the public street for his own private use. While a public dock differs from a public highway in some important respects, the nature of the trust by which the municipality holds it is in essence the same; that is, for "the public use." By analogy, the rules of law which arise from the same essential principle should apply so far as practicable.

If so, and we think they do, then the trustees of the town lands of the town of Islip have no power to permit the Live Fish Company to maintain any structure on this public dock for its exclusive private use. Our attention is not called to any authority holding otherwise as to the private use of a public wharf. In this state practically all the decided cases on the question of the use of public wharves have arisen in the city of New York. By early statutes the public authorities were given power to lease, not the wharves themselves, but simply the right to collect wharfage. Even where such a lease was granted, it was held unlawful to obstruct free passage over the wharf by the erection of any structure thereon of a private nature. Commissioners of Pilots v. Clark, 33 N. Y. 251; Board of Commissioners of Pilots v. Erie Railway Co., 5 Rob. 366. It was not until 1875 that legislative authority was given to the city authorities to permit such structures. So firmly was the doctrine of exclusive public use for public wharves imbedded in the law that even the power of the Legislature to grant such authority was seriously challenged as in derogation of the public right. In People v. B. & O. R. R. Co., 117 N. Y. 150, 22 N. E. 1026, the power of the Legislature was upheld finally, but not without a distinct recognition by the court that without legislative grant the power to authorize such structures was not in the municipality.

In N. Y. Mail & Transportation Co. v. Shea, supra, this court held that the trustees of the New York and Brooklyn Bridge had the power to permit a part of the bridge structure to be used by a private corporation for the construction of tubes to transmit mail matter across the East River; but, as the court said, through Cullen, J., "the Brooklyn Bridge is a structure of exceptional character." Its construction was authorized by an act of Congress of March 3, 1869, as a "post road," and the tubes permitted to be laid were to be used under a contract with the United States government to transport mail matter between Brooklyn and New York, and their location was apart from any portion of the bridge structure usable for the primary purpose of passage over the river.

In Gushee v. City of New York, 42 App. Div. 37, 58 N. Y. Supp. 967, where it was held that the city might lease a structure in its parks to private parties to be used for refreshment purposes open to the pub-

lic generally, the ground of decision was that said use was incidental to the general purpose of public recreation and therefore in aid of the fullest public use. In Illinois, etc., Railroad & Canal Co. v. City of St. Louis et al., 2 Dill. R. 70, Fed. Cas. No. 7,007, it was held that the city might authorize the erection of a grain elevator upon a public wharf which was open to public use of all persons landing grain at the wharf.

This authority is distinguishable from the case at bar at a glance. Likewise is that of Pike's Peak Power Co. v. City of Colorado Springs, 105 Fed. 1, 44 C. C. A. 333, where it was held that a city which maintained a public water system had a right to contract with a private corporation for the use of the surplus water supply of the city for the purposes of generating electric power; but the theory of that decision was that the city in question owned and operated its water system as a proprietor, and not in its governmental capacity as an agent for "the public use." The case of Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co., 101 Mo. 192, 13 S. W. 822, 8 L. R. A. 801, is in point and very instructive. There it was held that the city of St. Louis might permit the erection on a public wharf of a structure used in connection with a grain elevator. The ground stated for the decision was that the structure in question, though under private control, was intended for a common use, which was but incidental to the public use of the wharf itself for all persons landing or shipping grain at the place in question. The court recognized and declared the general rule as follows:

"The property in question was condemned for wharf purposes, and it cannot be appropriated to a different and inconsistent use; nor can it, or any part thereof, be disposed of by the city for private purposes."

To the same effect is the case of City of St. Paul v. Chicago, etc.; Railroad Co., 63 Minn. 330, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184. This case, briefly stated, holds that, while there is a difference in the use of a public street and that of a public wharf, to the extent that on a public wharf it might be permitted to erect a structure for the receipt, delivery, or temporary storage of goods while in transit, "provided it were common to the use of all on the same terms," it would at the same time be unlawful to give "a particular person or corporation the right to occupy a levee as a site for its warehouse solely for its own business and to the exclusion of the general public."

Numerous cases are cited on the respondents' brief where the courts in other states have held that municipalities might allow the private use of parts of town halls when not required for the use of the town itself. Many of these cases are also cited in the opinion of this court in the case of N. Y. Mail Transportation Co. v. Shea, ut supra. In all of these cases, however, the particular property in question was held by the town primarily for its corporate purposes and in a quasi private or proprietary capacity. Where the property is held for the public use primarily, a different rule applies. 2 Dillon, Mun. Corporations, § 575, and cases cited.

It seems clear, therefore, that the dock in question which is under the charge of the respondents was acquired and is held for a general public use for landing purposes, and that such public use is the primary

use for which it was acquired and is maintained.   To permit any part of it to be occupied exclusively by an icehouse structure used for a purely private business is a violation of the public right and of the statutory duty imposed upon the respondents to regulate the use of the wharf for and by the public.   The whole wharf is held for the public use, and not simply a part of it.   Sound public policy forbids that there should be any power to divert a part thereof to a private use; for, once such power being assumed, the dangers which may follow either from favoritism or ill judgment may speedily hamper or practically destroy the fundamental purpose of the public use.

The respondents contend, further, that inasmuch as the relator is not a resident of the town of Islip, but simply a freeholder thereof, he is not entitled to maintain this proceeding.   Numerous instances are cited where similar proceedings were sustained by a relator who was simply a resident and citizen of the municipality acting on behalf of all the public, and such is the settled law of this state.   People ex rel. Pumpyansky v. Keating, 168 N. Y. 390, 61 N. E. 637.   No case is cited denying the same right to a taxpayer of a municipality because he happens to be a nonresident thereof, although a citizen of the state.

Nor is it clear in principle why such a distinction should be made. As a citizen of the state and a taxpayer of the town, the relator should be qualified to assert for the general public a right common to all the public.   It could scarcely be held that the right to use the dock in question for landing purposes is confined exclusively to residents of the town of Islip.

The order appealed from is reversed, with $10 costs and disbursements, and the motion for peremptory writ of mandamus is granted, with $50 costs.   All concur.