Norman L. Harvey, J.
For quite some time, the village government of the Village of Lake George has leased the exclusive use of a certain dock and dock facilities to Lake George Marine Industries, Inc., a private enterprise conducted for profit. The leasing arrangement began more than 20 years ago and Marine Industries’ occupation was not. challenged formally until June 17,1970. On that day the petitioner appeared before the village board and protested. He identified himself as the owner and operator of a business in competition with and offering essen *489 tially the same services as Lake George Marine Industries. The distinguishing difference was that the petitioner was operating from docks located upon land owned by his company for which it paid nearly $7,000 annual real property taxes. This was in sharp contrast to the tax-exempt status of the land leased to Lake George Marine Industries, Inc. for the total annual rent of $3,000.
Prior to the meeting of June 17, 1970, the village board had authorized the Mayor to execute a five-year lease of the dock facilities to commence on the 1st day of June, 1968. The Mayor had signed the lease but no officer of the respondent corporation had signed it. At the meeting, the members of the village board agreed that no valid lease existed between the village and Marine Industries and they instructed the village attorney to so notify said corporation. Whether or not said message was communicated was not revealed at the hearing. However, the written lease was executed by an officer of Lake George Marine Industries approximately five days after the meeting of the village board. The respondents contend that the written lease had been valid since 1968, without execution, by virtue of the performance of all its terms by both parties throughout its stated duration until its execution on June 22,1970.
These proceedings were commenced pursuant to article 78 of the CPLB. by Lake George Steamboat Co., Inc. as well as by its president and principal stockholder individually. The purpose of the action is to obtain an order directing the discontinuance of the private use of the dock and facilities of the village now being used by Marine Industries. Hearings were conducted. Considerable testimony was taken after many of the material facts were stipulated by the parties.
The dock and related facilities are located on land owned by the village on the southern shore of Lake George. The property rights had been conveyed to the village by the State of New York through its Land Office. The property was obtained for public purposes.
The principal issue raised by the parties to these proceedings is whether a municipality may, by lease or license, permit property acquired or held by it for the “ public use ” to be wholly or partly diverted to a possession or use exclusively private without specific legislative authority.
Marine Industries operates a large cruise-sightseeing boat on a scheduled basis. It has space in a public building for the sale of tickets to the public. Passengers embark upon their cruise at the village dock and debark at the same dock at the completion of the cruise. The dock is used for no other purpose.
*490 People ex rel. Swan v. Doxsee (136 App. Div. 400, affd. 198 N. Y. 605) appears to be a leading case on the issue. Required to determine whether a portion of a public dock could be used exclusively for private purposes, the court stated (pp. 405-406): ‘ ‘ It seems clear, therefore, that the dock in question, which is under the charge of the respondents, was acquired and is held for a general public use for landing purposes, and that such public use is the primary use for which it was acquired and is maintained. To permit any part of it to be occupied exclusively by an icehouse structure used for a purely private business is a violation of the public right and of the statutory duty imposed upon the respondents to regulate the use of the wharf for and by the public. The whole wharf is held for the public use, and not simply a part of it. Sound public policy forbids that there should be any power to divert a part thereof to a private use, for, once .such power being assumed, the dangers which may follow either from favoritism or ill-judgment may speedily hamper or practically destroy the fundamental purpose of the public use. ’ ’
The State Comptroller, in answer to a more recent inquiry, has rendered an opinion with which the court concurs.
‘1 Pursuant to the provisions of subdivision 65 of section 89 of the Village Law, and subject to the provisions of general law, the board of trustees of any village may construct, enlarge, extend or improve public docks as a municipal purpose. Charges for the use of the facilities of such dock may be imposed.
“ A village is without power to lease a public dock held by it for public use and divert it to a possession or use exclusively private, for private business purposes, in the absence of special legislative authority. (People ex rel. Swan v. Doxsee, 136 App. Div. 400 ; American Dock Co. v. City of New York, 174 Misc. 813).” (3 Opn. St. Comp., 1947, p. 178).
The respondents contend that the foregoing principles of law do not apply to the instant case. They argue that the Lake George region of New York State and the Village of Lake George depend upon tourism and recreation for their economic existence. They urge the court to follow the principles enunciated by Ocean Beach Ferry Corp. v. Incorporated Vil. of Ocean Beach (92 N. Y. S. 2d 275). In that case, the court permitted a municipality to lease public docks to a ferry operation which provided the only scheduled access to the island village from the mainland.
The court detects no philosophical similarity between the Ocean Beach case and the instant case. In Ocean Beach, the operation of the ferry was as direct a benefit to the -inhabitants of the village as a highway or a bridge. In the instant case, the operation of the sightseeing boat bestowed an indirect benefit *491 upon the inhabitants of the village. But, the same could be said of almost every business venture in the immediate area.
At the hearing, the present Mayor testified that his administration entered into the lease" because it was an extension of an arrangement which existed prior to his administration. The former Mayor testified that he had negotiated the purchase of the land and had promoted the leasing arrangement because he thought that a sight-seeing cruise business would add to the area’s attractiveness to tourists.
The court does not question the motives of any member of the village board, past or present. However, there is only one conclusion to be reached. That is, the village board had no authority to enter into the lease. The lease does not require Marine Industries to perform any service to the village or to the public other than payment of rent and performance of some maintenance. Even if such a service were required its benefits to the village would have been remote. It bestowed no benefit of any nature to the public use of the dock or docks in question.
It is obvious, of course, that special powers may be granted to a municipality by specific enactment of the Legislature. However, no evidence of special legislation was introduced.
In this regard, the respondents contend that one or more of the subject conveyances by the Land Office of the State of New York authorized the village to lease the lands subject to approval by the Commissioners. They urge that the actual references to leasing contained in the deeds and the requirement that leases be approved by the Land Office constituted a grant of authority to the village by the State of New York. With this contention, the court disagrees.
The Land Office has the power, pursuant to certain regulations, to impose restrictions upon a municipality’s use of property conveyed by it, but it has no authority to enlarge the powers of that municipality’s governing body. Such authority is reserved to the Legislature. Legislative sanction must be clear and certain to permit a municipality to lease public property for private purposes. (American Dock Co. v. City of New York, 174 Misc. 813.)
The respondents allege the further defense of laches. The facts of this case fail to meet the common criteria of this defense. (36 N. Y. Jur., Limitations and Laches, § 153.) A taxpayer does not forfeit his legal rights by his failure to review the legality of the various acts of a municipality’s governing body.
Submit order nullifying the lease and prohibiting the Village of Lake George fromleasing the dock herein.