Gray, J.
 

 The judgment of the court below directs the defendant in this action to remove a shed or structure, which it had erected upon a pier in the East river in the city of New York ; and further restrains the defendant from continuing to use the shed, or from placing upon that pier any structure which would be calculated to interfere with the free use of it by the public.
 

 
 *154
 
 The defendant is a foreign railroad corporation, having a terminus at the port of New York, and through its own and connecting lines of railroad, as we are informed by the record, carries on the business of transporting freight and passengers between the city of New York and the principal commercial centres of the United States. For the needs, as well as in furtherance, possibly, of its business, it acquired, in August, 1886, by lease from the owners thereof, the Bast river pier in question, and immediately thereafter applied to and obtained from the Department of Docks of the City of New York the permission to construct a shed upon it. Under that license the railroad company commenced and had nearly completed the erection of a shed suitable for its purposes of receiving and discharging merchandise which was brought there, or was carried to and from its railroad by means of steamers, or other vessels. This action was then brought, in the name of the people, by the attorney general, upon the solicitation of private persons engaged in business in the vicinity of the pier, and who conceived themselves to be aggrieved., or their interests to be damaged by the defendant’s enclosure of the pier. The action proceeded upon the theory that the company could not lawfully erect the shed in question and thereby secure the exclusive possession and use of the pier for its corporate purposes, and the judgment which the people obtained sustained and was founded upon that theory.
 

 The action in effect treated the license of the dock department as without authority in law, and hence conferring no right upon the company to avail itself of its terms. The point was made that the case was brought within the inhibition of § 773 of the consolidation act. The provisions of that section were enacted in chapter 435 of the laws of 1888, and that was an act in amendment of the third section of chapter 249 of the laws of 1875, poprdarly known as the “ Shed act.” It was entitled “An act to regulate the use of slips, wharves and piers in the city of New York,” and it provided that “ whenever any person, company or corporation engaged in the business of steam transportation shall be the owner or lessee of any pier or bulkhead in the. city of New York, and shall use and employ the same for the purpose of regularly receiving and discharging cargo thereat, it shall be lawful for such owner or lessee to erect and maintain upon such pier or bulkhead sheds for the protection of property so received and discharged; provided they shall have obtained from the department of docks, in said city, a license or authority to erect or maintain the same, and subject to the conditions and restrictions contained in such license or authority.” The act further legalized existing structures which may have been put up under such a license from the department. The inhibition referred to as contained within the provisions of the act of 1888 was found in its amendment of the third section of the act of 1875. The following is the provision, or so much of it as becomes material to our consideration, viz.: “It shall not be lawful to interfere with the free public use as now enjoyed * * * of any wharf or pier * * * in the navigable waters of the East river, in the city of New York, which has here
 
 *155
 
 tofore been used for the loading and discharging of sailing vessels regularly employed in foreign commerce, and having a draft of more than eighteen feet of water, and the provisions of this act shall not apply to any such wharf or pier * * *
 

 The passage of chapter 249 of the Laws of 1875 was due to the alarm occasioned in the minds of the occupants of wharves, bulkheads, piers, etc., by the knowledge that the sheds with which they covered these properties were unlawful structures. This knowledge was generally brought home to the community by a decision of the supreme court, at general term, in the first judicial department in 1873.
 

 In the case of
 
 People
 
 v. Mallory, 46 How. Pr., 281, that court had pronounced a permit issued by the commissioners of the dock department to the defendant to erect a shed on an East river pier to have been without lawful authority in those officers to grant. Such structures were held to be in violation of the existing laws, and in the case of
 
 Kingsland
 
 v.
 
 Mayor, etc.,
 
 110 N. Y., 569; 18 N. Y. State Rep., 701, we have recently approved of the conclusion which the court reached in
 
 People
 
 v.
 
 Mallory.
 
 But through the enactment of chapter 249 of the Laws of 1875 the dock department became possessed of the authority which it previously lacked, and the many instances of its exercise of a supposed authority were ratified and legalized. Its permission to shed the piers had not been a protection to parties as against the public, for the reason that the power to withdraw from the public use what was, in legal contemplation, a public highway, had not been delegated to it. Such a power could only reside in, and proceed from, the people of the state, who, in their right of sovereignty, possess the original and ultimate property in and to all lands and to the navigable waters within the jurisdiction of the state.
 

 The right to exercise the sovereign power of the people was vested in the legislative body, whose acts are supreme when confined within the limits fixed by the constitution of the state. An eminent domain over all property in the state is an incident of the sovereign power. Where its exercise affects the property of the private citizen, it is restricted by the constitution only in the feature that compensation must be made for its taking. The right of the state to take the property, however, is an absolute and inherent one. It is an attribute of political sovereignty, and the constitutional provision only operates upon the mode of exercise of the right. If an exercise of this power, as, for instance, as in this case, by permitting a use and an appropriation of a public pier to some other, or
 
 quasi
 
 private use, in the way proposed by this defendant, affects some existing or natural right of the public to the use of a highway, I cannot find in the organic law of the state, nor can I find upon principle any restriction upon the legislative act, other than that its action shall be in the direction of public utility.
 

 It seems to me self-evident as a proposition that the sovereign power, subject to the restrictions interposed by the fundamental law, may be exercised with respect to the puÚic, as well as the
 
 *156
 
 private rights of citizens. That seems to follow logically as the necessary understanding of the governed, of the scope and design of the political dominion of the state, and it finds reason and support in the principle underlying all forms of government, that for ends of the public utility and good all other ends should yield.
 

 It is said, in this case, that the use of the pier, being a public or natural highway, was in the people as
 
 jus
 
 publica, and cannot be impaired by legislation; and our recent decision in
 
 Bedlow
 
 v.
 
 Floating Dock
 
 Co., 112 N. Y., 274; 20 N. Y. State Rep., 707, is cited in that connection. But in that opinion the feature of public utility, which I have adverted to here, is distinctly recognized, for Ruger, Ch. J., says: “ The power of regulating, controlling and improving such waters in the interest of commerce undoubtedly exists. The right, therefore, of the city to erect structures in the navigable waters of the state must necessarily remain subject to the sovereign authority over such highways.” In my opinion the argument cannot be maintained that, in its delegation to the dock department of the power to authorize the shedding of a wharf or pier for private purposes, the legislature has abridged a public right, and, therefore, overstepped the limits of its powers. I think its action was in the direct line of a sound public policy. What it authorized to be done is in the general interests of that municipality, and though a private interest may be benefitted, that is an incident. The main feature and purpose are the recognition and furtherance of the commercial interests and needs of the community. The use of the piers and bulkheads for commercial purposes connected with shipping is an essential advantage to the inhabitants of the city of New York, and whatever .best promotes the beneficial use of the great water front is demanded in the exercise of political wisdom.
 

 It was found as a fact, in this case, that it was necessary for wharves and piers to be covered and enclosed, in order that property to be received and discharged by railroad companies, or other occupants, should be protected from loss and injury, and that all piers and wharves used for that purpose are shedded.
 

 This is an obvious fact, also, from the language of the act of 1875, the first section of which is a distinct recognition and ratification of an existing usage of shedding piers and wharves. Independent of finding and language, however, I think the legislative grant of power to the municipal body to permit the erection of structures upon these piers, etc., for the purpose of protection to property received and discharged would be a justifiable act of public policy, because of the evident reasons for such legislation and of the evident public utility of such a measure.
 

 Coming then to the question of whether the limitation imposed by the act of 1883 affects the pier of the defendant, I am unable to see that it does. The act of 1883 created an exception to the general power vested in the dock department by the act of 1875. The wording of the clause making the exception is somewhat peculiar. It is with respect to a wharf, pier, etc., “which has
 
 heretofore
 
 been used for the loading, etc., of sailing vessels regularly employed in foreign commerce and having a draft of more
 
 *157
 
 than eighteen feet of water.” This provision operated in restraint of a previously existing general power, and to deprive" the dock commissioners of authority in certain cases. When they have exercised their power and authority, as in the present case, it should very clearly appear that the case is within the exception of the statute before reversing their action. The trial judge expressly found, in substance, that while, prior to 1864, this pier was much used by the description of sailing vessels mentioned in the statute, from that time on steamships were rapidly substituted for them, and, by the year 1870, they had nearly superseded the sailing vessels engaged in such commerce. Since 1870 this pier has only occasionally been used by that class of sailing vessels, and in the four or five years preceding the commencement of the action it was not so used at all. . The general finding of fact, which the trial judge made, that the pier “ was for more than twenty years prior to the year 1883 used and resorted to by ships and vessels ” of the description referred to, does not militate against the other findings I have referred to. It was not necessarily inconsistent or contradictory, and as a general finding its effect and meaning were explained by the more particular findings, as to what and when was that use during the period of time of twenty years prior to 1883.
 

 The words “ heretofore been used ” in the amendatory section of the act of 1883 should be taken in their usual and ordinary sense and signification. Whenever the legislature has expressed its will, in words having a common acceptance and a plain, as contra-distinguished, from a technical meaning, we must read them as they would be supposed to be used and understood generally. So read, “ heretofore ” would, to the ordinary mind, convey the idea of before this time, that is to say: “hitherto,” “ down to this time,” and not at all the idea of comprehending any remote time in this, or the last century.
 

 The construction which must convey the true intent of this legislative act is that piers which have been in common and continuous use by sailing vessels, engaged in foreign commerce, of a draft of more than eighteen feet, shall continue open to that use.
 

 The manifest object of making such a reservation was to prevent piers, then in such use, and, hence, presumably much needed by the public, from being exclusively used by private persons or corporations. We are informed from the findings in this record that not only has this pier not been customarily used by the public for some time previous to its acquisition by the defendant, but that its use, in the manner contemplated, in no sense works an injury to public interests, or operates to make the accommodation inadequate for sailing-vessels at open piers on the East river.
 

 In my opinion, therefore, this pier is not one of those covered by the limitation of the act of 1883. As to the suggestion that the defendant’s structure is concededly exclusive and. permanent in its character, it seems to me sufficient to say that, of necessity, the shedding of a pier by a licensee of the dock department under the act of 1875 must result in giving exclusive possession of the pier. Without full control of the pier by the company,
 
 *158
 
 where would be the adequate or proper protection for the property received and discharged, which the act of 1875 had in view-The permission to shed a pier, under the act, amounts to turning the public pier into a private one for the time, and such must have been, it is humanly reasonable to suppose, the understanding of the legislature of the possible effect of its delegation of power to the dock department.
 

 It results, from the views I have expressed, that the conclusion of the trial judge that the defendant’s structures were unlawful and prohibited by the statute was erroneous, and, therefore, that the judgment entered upon it, and the judgment of affirmance at general term, should be reversed and a new trial ordered, costs to abide the event.
 

 All concur, except Andrews and Danforth, JJ., dissenting.