GUISEPPE FALCONE, as Administrator, etc., of PIETRO FALCONE, Deceased, Respondent, *v.* NATIONAL CASKET COMPANY, Appellant.

First Department, February 6, 1920.

**Motor vehicles — negligence — action to recover for wrongful death — evidence — admissibility of contents of hospital signs posted on street — trial — comments of court at time evidence was admitted as to materiality thereof.**

Where in an action to recover for wrongful death alleged to have been caused by the excessive speed and carelessness with which the defendant's automobile was driven, the case was a close one on the facts, it was reversible error to admit evidence of the contents of hospital signs which were posted along the street at the place of the accident, warning travelers

to "Walk Your Horses" and "Make No Unnecessary Noise," accompanied by statements of the court made in the presence of the jury that they might infer from the existence of the signs that the decedent, having seen them, might rely upon them as an assurance of safety, and also that the jury might infer that the defendant's chauffeur, having seen them, neglected to obey their mandate.

APPEAL by the defendant, National Casket Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of June, 1919, upon the verdict of a jury for $5,200, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Frederick Mellor*, for the appellant.

*Samuel Wechsler* of counsel [*Palmieri & Wechsler*, attorneys], for the respondent.

MERRELL, J.:

This action is to recover damages for the death of the plaintiff's intestate, claimed to have resulted by reason of the negligence of the chauffeur of the defendant, for which the defendant is responsible. Upon the trial the jury rendered a verdict in plaintiff's favor and against the defendant for $5,200, upon which the judgment was entered from which this appeal was taken.

But two grounds for reversal are urged by the appellant upon this appeal: *First*, because of a claimed error of the court in admitting in evidence a hospital sign and testimony concerning hospital signs upon the street upon which the accident occurred; and, *second*, that the verdict was for excessive damages.

As to the first alleged error, the plaintiff was permitted to prove that upon East Sixtieth street, in the borough of Manhattan, where the plaintiff's intestate was killed as the result of the alleged excessive speed and carelessness with which the defendant's car was driven, were four signs which were claimed by the plaintiff upon the trial to have a bearing upon the question of the negligence of the defendant and

the freedom from contributory negligence of plaintiff's intestate. One of these signs was on the southerly side of Sixtieth street between First and Second avenues at the point where the surface railway comes from beneath the approach to the Queensboro bridge and enters East Sixtieth street. That sign was fastened to one of the pillars of the bridge anchorage and was about six feet long and about two feet six inches high, bearing upon its face the inscription in large letters: " Danger. Look out for the cars." Manifestly this sign, placed on the pillar nearest to the point where the surface railway comes from beneath the bridge approach and enters East Sixtieth street, was for the purpose of warning pedestrians upon the sidewalk against surface cars coming from beneath the bridge. The other three signs were shown to have been placed upon lamp poles on East Sixtieth street between First and Second avenues, and were described as the usual metallic hospital signs with embossed lettering. These signs were each about twenty-four inches wide and about twenty inches high, and were described by the witnesses as the standard hospital signs. They bore the following inscription in embossed letters:

" —NOTICE —
" Hospital Street
" (By ordinance, Board of Aldermen)
" Walk Your Horses
" Make No
" Unnecessary Noise
" Under penalty of the law.
" President, Borough of Manhattan."

It appeared from the testimony that defendant's chauffeur was familiar with these signs. Upon the northerly side of Sixtieth street a short distance from First avenue, and somewhat easterly from the point where the accident occurred, was situated the Manhattan Maternity Hospital. These three hospital signs were erected pursuant to section 131 of article 12 of chapter 23 of the Code of Ordinances of the City of New York, reading as follows:

" § 131. Hospital streets. The several borough presidents are hereby authorized to erect on lamp-posts, or, in the absence of lamp-posts, on such posts as they may find

occasion to erect, at corners of intersecting streets on which may be located a hospital, lying-in asylum, sanatorium or other institution reserved for the treatment of the sick, a sign or signs displaying the words: ' Notice — Hospital Street,' and such other warning or admonition to pedestrians and drivers to refrain from fast driving or making any noise that may tend to disturb the peace and quiet of any or all of the inmates of such institution. No person shall make any unnecessary noise nor drive at a speed faster than a walk on any street designated as a ' Hospital Street,' for which such warning signs have been erected." (See Cosby's Code of Ordinances [Anno. 1918], pp. 483, 484, § 131.)

The plaintiff sought to introduce such ordinance in evidence, and the same seems to have been received in evidence when offered, although the court thereafter stated that the ordinance had not been received. Later in the trial counsel for the plaintiff asked the court to take judicial notice of the ordinance, which the court apparently refused to do. If such ordinance, in fact, existed, it is difficult to see how the court could avoid taking judicial notice thereof. (See Greater N. Y. Charter [Laws of 1901, chap. 466], § 1556, as amd. by Laws of 1917, chap. 382.)

As to the hospital signs which the plaintiff was permitted to prove, I think the court erred in receiving the contents of such signs in evidence. The ordinance under which the signs were erected was manifestly for the purpose of securing quiet and minimizing noise in the neighborhood of hospitals and sanatoriums or other institutions for the treatment of the sick, and the office of the signs in question was to warn pedestrians and drivers to refrain from disturbing the quiet of the neighborhood by fast driving or other noises. These signs could have no possible bearing upon the question of the negligence of the chauffeur or the contributory negligence of plaintiff's intestate in the case at bar. In permitting the plaintiff to prove, as a part of his case, the hospital signs in question, the court expressed itself, in the presence of the jury, as to the materiality of such proof, in the following language: " This sign is not offered, as I understand it, in evidence as the proximate cause of the accident. It is simply offered as a bit of evidence of the environment and circum-

stances from which the jury may draw, coupled with other evidence in the case, proper inferences on the question of negligence; as for instance, the probability of the boy having seen it and relying on it, with a certain sense of a degree of safety, or the probability of the chauffeur having seen it and neglected it; all those possible, reasonable inferences may be drawn, and I repeat it is received in evidence not because it is deemed as the proximate cause of the accident, merely because it is a circumstance in the case. The objection is overruled."

The court thus stated in the presence of the jury, in effect, that the sign was offered and received as evidence of the environment and circumstances from which the jury might draw inferences upon the question of negligence. The court stated, in effect, that the jury might infer, from the existence of such signs, that plaintiff's intestate, having seen such a sign might rely upon it as an assurance of safety, and also that the jury might infer that the chauffeur, having seen it, neglected to obey its mandate. Had the signs related to automobiles and commanded that such vehicles traverse said street at slackened speed, there would have been some reason in the suggestion of the court, but the signs were directed solely against the making of noise upon this hospital street and commanded drivers to walk their horses instead of trotting or running them, with the evident sole purpose of avoiding unnecessary noise. By no possible stretch of imagination can it be said that the signs in question related to the driving of automobiles or the speed with which such vehicles should be driven. The direction of the signs, that drivers should walk their horses and make no unnecessary noise, was clearly for the benefit and comfort of inmates of the hospital, and had no bearing whatever upon the speed at which automobiles should be driven upon the street. As affecting the question of passing vehicles upon the street, there is absolutely no comparison between horse-drawn vehicles and automobiles. It is a matter of common knowledge that a trotting or a running horse, with the accompaniment of heavy hoof-falls upon the pavement, causes a much louder noise than as though the animal were slowly walked upon the pavement. The speed at which a motor car travels has little, if anything,

to do with the noise which it makes. The pavement upon the street in question was granite block, with the exception of the portion in front of the maternity hospital and about twenty-five feet easterly therefrom, which was of smooth asphalt. The street, as it ran easterly, was at a considerable grade, of between two and three per cent, the fall of the street between Second and First avenues, a distance of 650 feet, being 17 feet. So far as noise was concerned, to minimize which the signs were evidently directed, an automobile might easily have coasted noiselessly through this street at downgrade, and its speed would have had no bearing upon the noise it would have made in traversing the street.

Therefore, it seems to me that the expression of the court's opinion as to the relevancy and importance of these signs, as suggested at the time the contents of the signs was received in evidence, constituted error. It is true that the remark of the court was not in connection with its charge in submitting the case to the jury, but it was an expression of the court made in the presence and hearing of the jury, and may well have affected its action in a close case. In charging the jury, and in response to the request of counsel for the plaintiff, that the court take judicial notice and instruct the jury with reference to the city ordinance relating to hospital signs, the court stated that the jurors would consider, with all the other evidence in the case, whatever circumstances were in the environment and the situation where the accident occurred, in determining the question of negligence or freedom from negligence. This, following upon the suggestion of the court as to the inferences properly to be drawn from these signs, was, in effect, a plain instruction to the jury that it might draw the inferences from the existence of such signs that the court had suggested at the time the contents of the signs was admitted in evidence. Throughout the trial, counsel for the plaintiff made a persistent effort to introduce in evidence the city ordinance relative to these hospital signs and at every available opportunity sought to magnify the importance of said signs and to impress upon the jury their relevancy to the issues.

The case, upon the facts, was an extremely close one, and, being close, the admission of the hospital signs in evidence,

under erroneous suggestions by the court as to their relevancy, may well have influenced the jury in reaching the result indicated by their verdict. Had the other evidence in the case clearly indicated that plaintiff's intestate came to his death by reason of the negligence of defendant's chauffeur and that no negligence of the decedent contributed thereto, such error might be overlooked as unprejudicial, but in view of the extreme closeness of the case upon the facts, as disclosed by the evidence, we are unable to say that the reception of the hospital signs, accompanied by erroneous suggestions of the court as to their relevancy, did not influence the jury to render a verdict in plaintiff's favor. Having reached the conclusion that by reason of such error there must be a reversal of the judgment entered upon the verdict of the jury, it is unnecessary to consider the question as to the excessiveness of the verdict rendered.

The judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.