A. H. Woods Theatre Company, Inc., Plaintiff, *v.* John F. Gilchrist, Commissioner of Licenses of the City of New York, Defendant.

(Supreme Court, New York Special Term, January, 1922.)

Municipal corporations — city of New York — injunction — commissioner of licenses has power to revoke theatre license.

> The commissioner of licenses of the city of New York has legal power to revoke a theatre license, and a motion for an injunction *pendente lite* in an action to restrain the exercise of such power will be denied.

Motion for injunction *pendente lite.*

Max D. Steuer, for plaintiff.

John P. O'Brien, corporation counsel, for defendant.

Wagner, J. The plaintiff seeks to restrain the defendant commissioner of licenses of the city of New York from revoking the license of the Eltinge Theatre. The commissioner has given written notice to plaintiff that in his judgment the play, " The Demi-Virgin," being produced at the theatre of which plaintiff is licensee, is indecent and immoral; that its public exhibition is subversive of public morals, and that if its exhibition is not discontinued he will revoke the

license of the theatre. Hence this application to enjoin the commissioner from executing such purpose, basing its prayer for judicial aid upon the sole ground that the commissioner is without legal power to revoke a theatre license.

An examination of the history of the statutes and ordinances that are applicable convince me that the commissioner has the authority to revoke the license which is the subject of this litigation. The office of commissioner of licenses was created and his powers and duties defined by chapter 475 of the Laws of 1914. That statute became effective April 20, 1914. Prior to that date the authority to issue theatre licenses and for similar places of amusement was vested in the police department of the city; the power to revoke such licenses was vested in " any judge or justice of any court of record in said city upon proof of a violation of any of the provisions of this title." It is manifest, therefore, that the power of revocation vested in the court was a limited one. It could only be exercised upon the ground that certain offenses, specified in that particular title of the charter (tit. 2, chap. 22), had been committed. For offenses not included in the aforementioned title or for other reasons, there does not seem to have been any statutory authority for the revocation of such licenses prior to April 20, 1914. Section 1476 of the charter, which is the source of this judicial authority to revoke licenses, was, in June, 1914, enacted as an ordinance, and is section 4 of article 1 of chapter 3 of the Code of Ordinances, which again in express terms prescribes the particular remedy for a violation of any provision of this article. Chapter 475 of the Laws of 1914, which became a law on April 20, 1914, provides among other things as follows: " The commissioner of licenses shall have cognizance and control of the granting, issuing, trans-

ferring, renewing, revoking, suspending and canceling of all licenses in relation to theatres and concerts now issued by the police commissioner." This constitutes a general and definite grant of power to the commissioner. Under this grant he is vested with powers and duties of a universal nature, except where the universality of the grant is delimited by specific provisions of law. The only inconsistent specific provision which encroaches on this authority of the commissioner is found in the provisions of section 1476 of the charter and the city ordinance which adopted the words of that section. But these provisions relate to revocations for offenses against title 2 of chapter 22 of the charter, and at most, if at all, authority only to revoke for such offenses is taken from the commissioner. So far as those particular offenses are concerned, it might be possible that the power to revoke is lodged solely in a judge or justice of a court of record, although it might be more convincingly urged that the enactment of chapter 475 of the Laws of 1914 operates as a repeal of the provisions placing such powers to revoke in the judges or justices of a court of record. Whether such repeal was in fact effected, however, does not change the determination of the particular question in issue here, since we are not concerned with an offense specified in title 2 of chapter 22 of the charter. It is not essential, therefore, to decide whether the commissioner is excluded from authority to revoke licenses for any such violation. Out of the obscurities and, perhaps, inconsistencies of the law on this question, there survives unmistakably the legislative mandate that the commissioner shall have general authority to revoke such licenses at least for other reason than the violations against title 2 of chapter 22. That this was the legislative intent is obvious by the consideration of the fact that if the commissioner has no such power no one has.

The plaintiff further urges that to give a ministerial officer such power would be to establish him a censor over all theatrical productions. The power of revocation is an administrative function and not an act of censorship. For if it be exercised capriciously, arbitrarily, upon unreasonable apprehension or upon false information, the courts, if appealed to, will stay the administrator's hand. Nor is the placing of the power to revoke in the hands of a delegated official an abridgment of the right to the free expression of thought, as is contended. It may only be exercised to prevent the production of what in his judgment is an immoral or indecent play and offensive to the public conscience.

The power existing, its threatened exercise under the circumstances will not be restrained.

Motion denied.