A. H. WOODS THEATRE COMPANY, INC., Appellant, *v.* JOHN F. GILCHRIST, Commissioner of Licenses of the City of New York, Respondent.

First Department, February 20, 1922.

**Municipal corporations — city of New York — commissioner of licenses has no power under Greater New York charter, § 641, to revoke theatre license because of production of improper play — Greater New York charter, § 1476, giving authority to judge or justice to revoke theatre license not repealed by subsequent enactment of § 641 — power continued by Code of Ordinances, chap. 3, art. 1, § 4.**

Under section 641 of the Greater New York charter (added by Laws of 1914, chap. 475, as amd. by Laws of 1917, chap. 618), giving the commissioner of licenses cognizance and control of the issuance, revocation and suspension of all licenses granted by the city departments, and vesting said commissioner " with all the powers and functions now exercised in relation to licenses by " the different departments, including those of the police commissioner in relation to theatres and concerts, the commissioner of licenses has no power to revoke a theatre license because of the production in said theatre of a play which in his judgment is improper, in view of the special provision of section 1476 of the charter of 1897, giving to a judge or justice of a court of record in the city power to revoke a theatre license, which was not repealed by section 641 of the charter, and is now contained in section 4 of article 1 of chapter 3 of the Code of Ordinances of the City of New York.

APPEAL by the plaintiff, A. H. Woods Theatre Company, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 9th day of January, 1922, denying plaintiff's motion for an injunction *pendente lite* restraining the commissioner of licenses of the city of New York from revoking the license of the Eltinge Theatre in the city of New York.

*Louis J. Vorhaus* of counsel [*Max D. Steuer* with him on the brief], for the appellant.

*John P. O'Brien, Corporation Counsel* [*John Lehman* of counsel; *John F. O'Brien* with him on the brief], for the respondent.

*William Klein* [*Siegfried F. Hartman* with him on the brief], for Theatre Owners, constituting a majority of the producers of the city of New York, *amici curiæ.*

·SMITH, J.:

This appeal presents the question whether the commissioner of licenses has power to revoke a theatre license because of the production in that theatre of a play which in his judgment is an improper play for exhibition. The appellant here challenges that right as in excess of any power given to the commissioner of licenses by the city charter or ordinances. The court at Special Term sustained this right, and has granted an order refusing to enjoin the commissioner of licenses from the revocation of this theatre license. (117 Misc. Rep. 605.) From that order the plaintiff is here appealing.

The respondent claims this power under section 641 of the Greater New York charter. (Laws of 1901, chap. 466, § 641, added by Laws of 1914, chap. 475, as amd. by Laws of 1917, chap. 618.) This section provides that " The commissioner of licenses shall have *cognizance and control of the granting,* issuing, transferring, renewing, *revoking,* suspending and canceling: 1. Of all licenses and permits now issued by the mayor pursuant to the Code of Ordinances of the city. 2. Of all licenses and permits now issued by the bureau of licenses attached to the mayor's office. 3. Of all licenses issued under the provisions of article eleven of the General Business Law, so far as it applies to the city of New York. 4. Of all licenses in relation to theatres and concerts now issued under the provisions of sections fourteen hundred and seventy-three, fourteen hundred and seventy-four, fourteen hundred and seventy-five and fourteen hundred and eighty-three of the Greater New New York charter by the police commissioner. 5. Of all licenses in relation to dance halls and the appointment of inspectors thereof in pursuance of sections fourteen hundred and ninety and fourteen hundred and ninety-four of the Greater New York charter as added thereto by chapter five hundred and forty-seven of the laws of nineteen hundred and ten. 6. Of all licenses issued under the provisions of article five of the General Business Law so far as it applies to the city of New York.

9

" *The commissioner of licenses is hereby vested with all the powers and functions now exercised in relation to licenses by* (1) the mayor pursuant to the Code of Ordinances of the city; (2) by the bureau of licenses attached to the mayor's office; (3) by the commissioner of licenses appointed by the mayor under the provisions of article eleven of the General Business Law; (4) *by the police commissioner in relation to theatres and concerts;* (5) by the mayor or other licensing authority in relation to public dance halls; (6) by the mayor in relation to pawnbrokers in the city of New York, except that any citizen who shall have carried on the business of a pawnbroker in said city shall be entitled to a renewal of his license by said commissioner, unless it shall appear upon proof that he is not a person of proper character to carry on said business."

Prior to the passage of this act the mayor had absolute power to revoke certain licenses issued by him and the bureau of licenses attached to his office. Certain licenses issued by the mayor under article 5 of the General Business Law were revokable for cause, those under article 11 for specified causes after a hearing had, and those for dance halls for specified causes after service of charges. Licenses in relation to theatres and concerts were to be issued by the police commissioner. There was no power whatever given to the police commissioner to revoke any license which he might give. But the power to revoke a theatre license was, under a special provision of section 1476 of the original Greater New York charter (Laws of 1897, chap. 378) given to a judge or justice of a court of record in the city upon proof of a violation of any of the provisions of title 2 of chapter 22 of said charter. It is therein provided that such license could not be revoked except upon an order to show cause which must be served not less than two days prior to its return, and that the judge or justice should hear the proofs and allegations and determine the matter summarily, and that no appeal should be taken from such determination, and that a person whose license had been revoked should not thereafter be entitled to a license. This provision as to the revocation of a theatre license only by the court upon notice for specified causes was not repealed upon the passage of chapter 475 of the Laws of 1914, in which appeared for the first time section 641 of the charter as above noted. It cannot be assumed that this was an oversight of the Legislature, for it amended the three sections immediately preceding, and other sections following it, so that the Legislature deliberately continued the provision that a theatre license might be revoked by a justice of a court of record for specified causes shown and upon specified notice given. To hold that, with the continuance of this power in a justice of a court of record thus to

revoke such licenses upon notice and hearing, the Legislature intended to give to the commissioner of licenses the same power to revoke without any hearing and without any standard by which his action should be guided, is a violent assumption, which should not be made unless the intent so to do appears clearly in the act. The provisions of section 1476 of the Greater New York charter of 1897 were, in substance, subsequently transferred to section 4 of article 1 of chapter 3 of the Code of Ordinances of the City of New York, and this court must take judicial notice thereof. (See Greater New York Charter [Laws of 1901, chap. 466], § 1556, as amd. by Laws of 1917, chap. 382; *Falcone* v. *National Casket Co.,* 190 App. Div. 654; *Stevenson & Co., Inc.,* v. *Hartman,* 191 id. 409; Laws of 1901, chap. 466, " Section Three.")

In my judgment the terms of this provision of section 641 of the charter cannot be construed to give this power. In the first place, the commissioner of licenses is given cognizance and control of the issuance, revocation and suspension of all licenses granted by these different departments which include all of the departments in the city by which different licenses were granted. When, however, the grant of power is made in the same section, it provides that the commissioner of licenses " is hereby vested with all the powers and functions now exercised in relation to licenses by " the different departments, including the police commissioner in relation to theatres and concerts. When these provisions of this same section are read together, they clearly give to the commissioner of licenses all the powers to grant or revoke licenses which had been held by these other departments, and that, in my judgment, was the extent of the power given to him. No right of censorship of any play was thereby expressly given, but it is claimed to have been indirectly given by power to revoke the license of a theatre wherein the same is produced. It is not a license to produce the play which is to be revoked, but a license to conduct the theatre for any purpose which is to be revoked; and such right of revocation is claimed to exist, notwithstanding the power of revocation was withheld from the police commissioner and given to a judge or justice of a court of record in the city for causes assigned, among which was not included the causes for which this theatre license is threatened to be revoked by the commissioner, and that power in a justice of a court of record confessedly still exists.

Another consideration which bears upon the interpretation of this statute is that, if this right of revocation exists, it may be exercised without notice or hearing and without any standard prescribed in the statute itself by which the commissioner shall be controlled, and it also exists without notice or hearing for the

very causes for which a justice of a court of record may revoke the license, and for which notice and a hearing are required. The power thus claimed is a power of censorship of all plays and all performances. It is a most dangerous power to vest in a single official — liable to misuse and to become oppressive. The right of censorship for moving picture exhibitions given by chapter 715 of the Laws of 1921 is to be exercised by a commission appointed by the Governor and confirmed by the Senate, and its determinations are expressly made reviewable by the court. It seems an extraordinary interpretation of section 641 of the charter to hold that power to censor all plays other than motion picture plays is given to a single official whose appointment by the mayor is not subject to confirmation by any municipal body (Greater New York Charter, § 640, as added by Laws of 1914, chap. 475), with no standard given to him to guide his action, and with no provision either for a hearing before the commissioner or for a hearing to review his determination.

I am not unmindful that this construction of the power of the commissioner of licenses which I have found, prevents his prohibiting a play which he would condemn in the interest of public morals. The play sought to be prevented by the commissioner is one which, according to the exhibit submitted on the argument, has little in it to commend and much to condemn. But the public has little to apprehend from the holding of this limitation of power of the commissioner of licenses, because under the criminal law any obscene or indecent exhibition may be punished as a misdemeanor. (Penal Law, § 1140a.) Not only is the party who produces such an exhibition liable to the penalty of the criminal law, but every person who participates therein. Ordinarily this provision of the criminal law affords a reasonable safeguard to the public from the presentation of indecent plays. If it should be found inadequate, however, the Legislature may provide for a censorship of plays, in which case it is probable that the right of censorship would be given to some public board, and at least some rule would be stated for their guidance in making their determinations after a hearing of the parties interested. The respondent relies upon the case of *Message Photo-Play Co., Inc.,* v. *Bell* (179 App. Div. 13), decided in this department. That involved the power to revoke the license of a motion picture theatre. By section 31 of article 2 of chapter 3 of the Code of Ordinances of the city, as referred to in the opinion in that case, the commissioner of licenses is given power to " regulate and control all motion-picture theatres," and he is directed to appoint such inspectors as may be necessary to enable him to carry out the provisions of the article; and by

section 41 of the ordinance in question, the inspectors appointed by him are required, among other things, to investigate the character of exhibitions in motion picture theatres, and to report to the commissioner any offenses against morality, decency or public welfare committed in such exhibitions. In that case there was direct authority to " control all motion-picture theatres," which authority is nowhere given as to other theatres. In the opinion this was referred to and section 641 of the charter quoted. The provision of the ordinances required a different license for a motion picture theatre, and the regulations as to licenses for a moving picture theatre only are those discussed in the opinion in the case cited. Authority to revoke might well have been found from the ordinances giving control of the motion picture theatres to the commissioner of licenses, and from the specific provisions in reference to the issuing of such licenses, and in reference to the supervision of the pictures displayed therein, and the appointment of inspectors who should inspect the exhibitions displayed therein and report to the commissioner any offenses against morality, decency or public welfare committed in such exhibitions. These provisions, made specially applicable to motion picture theatres, might well be construed as sufficient authority in the commissioner of licenses to revoke a license in case of the display of the picture that offends against morality, decency or public welfare, independent of section 641 of the charter. In that case, however, no question was raised as to the power of the commissioner of licenses. In the opinion at Special Term (100 Misc. Rep. 267, 268) it was specifically stated that no question was raised as to that power, and in the briefs presented in this court, the power was not questioned, and it was nowhere argued that section 641 of the charter would alone justify the exercise of the power to revoke, nor does the opinion in this court go to that extent, but only holds that from the powers given to the commissioner of licenses, both by statute *and by the specific ordinances referred to*, may be found the power, applicable only to motion picture theatres, which is unchallenged in the briefs of counsel to revoke a license in a case of a motion picture theatre, where the standards to guide the commissioner of licenses are specifically named.

I do not think, therefore, that that case can be deemed an authority for the giving of that power to revoke a license of a theatre which is not a motion picture theatre, where the power is not clearly given, and no standard is expressed in the charter provision which should guide the commissioner in the exercise of any such power, and where the power to revoke the license for specified causes, after a hearing, still remains in a justice of a court of record.

The order should be reversed, with ten dollars costs and disbursements, and the motion for an injunction should be granted.

CLARKE, P. J., LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion for injunction granted. Settle order on notice.