HOLLY HOLDING CORPORATION, Appellant, *v.* PAUL MOSS, as Commissioner of Licenses of the City of New York, Respondent.

First Department, December 27, 1935.

Jacob I. *Goodstein*, for the appellant.

*Ralph W. Thomas* of counsel [*Paxton Blair* and *Francis J. Bloustein* with him on the brief; *Paul Windels, Corporation Counsel*], for the respondent.

*Morris L. Ernst*, for the American Civil Liberties Union, *amicus curiæ*.

UNTERMYER, J. The plaintiff operates a theatre in New York city under a license from the commissioner of licenses for a period of one year commencing May 1, 1935, for a license fee of $500, issued in accordance with sections 1472 and 1473 of the Greater New York Charter and sections 1 and 2 of article 1 of chapter 3 of the Code of Ordinances of the City of New York. At the time the license was received the plaintiff executed a consent to the effect that it would conform to certain rules and regulations of the department of licenses concerning the character of exhibitions to be given in its theatre. That consent, however, expressly provided that the plaintiff did not waive its " constitutional and/or legal rights."

On September 13, 1935, the commissioner notified the plaintiff that its license to conduct a theatre was suspended as of September 14, 1935. The commissioner's action followed hearings which had been held by him upon notice to the plaintiff in consequence of complaints received with respect to the character of performances at the plaintiff's theatre. The evidence before the commissioner, if assumed to be true, would establish that those performances were indecent to a degree fully justifying the revocation of the plaintiff's license, provided the commissioner is vested with such power by law. We are of the opinion, however, that he has no such jurisdiction or authority.

The power of the commissioner of licenses to revoke the license for a theatre on account of a production therein which in his opinion is obscene, came before this court in 1922 in *Woods Theatre Co., Inc.,* v. *Gilchrist* (200 App. Div. 128). There, after full consideration of the pertinent statutory provisions and ordinances, it was held that no such right of censorship was conferred upon the commissioner. The decision of this court was affirmed by the Court of Appeals (233 N. Y. 616), though by a divided court. Since then the Legisla-

ture has not only refrained from extending the power of the commissioner in this respect, but by implication has recognized the limitation, for, by chapter 690 of the Laws of 1927, it amended section 1140-a of the Penal Law to provide that where there has been a conviction for the production of an obscene exhibition upon premises licensed as a theatre " the licensing authority shall have power to revoke such license upon proof of such conviction." If the Legislature had intended the commissioner to have general power to revoke such licenses, it is hardly possible that it would expressly have conferred that power in these special circumstances, thus in effect prescribing a conviction under section 1140-a of the Penal Law as a condition precedent to its exercise.

The Special Term expressed the opinion that the commissioner had power to revoke the license for a theatre by virtue of the amendment (effective June 16, 1931) of section 1 of article 1 of chapter 14 of the Code of Ordinances, which provides: " No place of public amusement or sport, outdoor or indoor, not heretofore specified, shall be operated without a license issued by the commissioner of licenses upon payment of such fees as may be prescribed by him, and upon such terms and conditions as the said commissioner of licenses deems necessary for proper regulation and good order." This amendment constitutes the closing paragraph of section 1 of article 1 of chapter 14, which contains no express reference to the licensing of theatres. On the contrary, it provides for the licensing of a considerable number of other trades and occupations " in addition to the businesses, places, trades, occupations and things required to be licensed by statute or by other chapters of this code." Section 5 of article 1 of chapter 14 likewise provides for the suspension and revocation by the commissioner of any license or permit " issued by him, under any provision of this ordinance." The respondent now contends, and the court below has held, that the concluding paragraph of section 1, referring to places of amusement " not heretofore specified," includes theatres because they are not specified in section 1, and that accordingly such licenses may be suspended or revoked by the commissioner under section 5.

We are of opinion that these provisions are not susceptible of that interpretation. We think that the reference to places of public amusement " not heretofore specified " is to places of amusement for the licensing of which no provision had theretofore been made by law. In the case of theatres, licenses had theretofore expressly been provided for in great detail both by sections 1472 and 1473 et seq. of the Greater New York Charter and by article 1 of chapter 3 of the Code of Ordinances. The manifest purpose of the amendment of 1931 was to empower the commissioner of licenses to

require a license in respect to forms of entertainment for which no license had been " heretofore specified " for such fees and upon such other conditions as the commissioner might prescribe. The word " heretofore " does not relate merely to the occupations enumerated in section 1, but to forms of entertainment for the licensing of which no provision had previously been made. (See General Construction Law, § 23; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 150; *People ex rel. Huntington* v. *Crennan*, 141 id. 239.) Any other construction would reduce the ordinance to contradiction and absurdity. It would, for instance, authorize the commissioner to refuse to issue such licenses except " upon payment of such fees as may be prescribed by him." Since section 1473 of the Greater New York Charter and section 2 of article 1 of chapter 3 of the Code of Ordinances expressly prescribe that the license fee for a theatre shall be $500, the interpretation contended for by the respondent would create inconsistencies impossible to reconcile. No such inconsistencies exist if we limit the application of the amendment to forms of entertainment for which special provision had not theretofore been made and for which consequently no license fee or " terms and conditions " had been specified.

The history of the amendment of 1931, to which we must give consideration in determining its effect (*McLean* v. *United States*, 226 U. S. 374; *Lapina* v. *Williams*, 232 id. 78; *Blake* v. *National Banks*, 23 Wall. 307; *People ex rel. Fleming* v. *Dalton*, 158 N. Y. 175 and cases cited at pp. 184, 185), strongly confirms this view. It is a matter of record that while that amendment was under consideration the committee on general welfare of the board of aldermen reported to the board (Proceedings of the Board of Aldermen and Municipal Assembly, Aldermanic Branch, vol. I, p. 1179, dated June 2, 1931), as follows: " The purpose of the proposed ordinance is to require a license from the commissioner of licenses for any place of public amusement or sport not specifically mentioned in the Code of Ordinances. It can readily be understood that different amusements and sports will be introduced to the public and pending the amendment to the Code of Ordinances there would be no effective regulation. Your Committee therefore deems it advisable to prescribe that places of public amusement and sport should not be operated without a license and that the commissioner of licenses should have power to prescribe the terms and conditions upon which such license should be issued, pending the adoption of the ordinance covering the subject by the Board of Aldermen."

Following this report of the committee on general welfare, the amendment was enacted, effective June 16, 1931. In the light of the history of that amendment, combined with the terms in which

it is expressed and its inconsistency with other licensing provisions if construed differently, we think it can have no application to theatres and that the commissioner of licenses is accordingly without jurisdiction to suspend or revoke such a license. Nor is there force in the suggestion that if the commissioner has power to refuse the renewal of the license for a theatre (*Matter of Rudhlan Amusement Corp.* v. *Geraghty*, 146 Misc. 308) he must also have the power to suspend or revoke. The case cited fully recognized that these powers differ both in nature and effect. That they are different is very evident from the fact alone that where the commissioner refuses to renew a license, the licensee does not lose the amount paid as a license fee, while if the license is revoked or suspended the licensee may lose the greater part of the amount so paid.

If the commissioner has no such jurisdiction, then, of course, he cannot exercise the power of revocation, even after a hearing and for reasonable cause. If there is no such jurisdiction, then also, the plaintiff's consent to conform to the regulations of the department of licenses with respect to the nature of the exhibitions, given without waiver of any legal rights, is ineffectual to vest the commissioner with jurisdiction over subject-matter which is not conferred by law. (Compare *Benson* v. *Eastern Bldg. & Loan Assn.*, 174 N. Y. 83; *Meacham* v. *Jamestown, F. & C. R. R. Co.*, 211 id. 346; *Dudley* v. *Mayhew*, 3 id. 9; *Davidsburgh* v. *Knickerbocker Life Ins. Co.*, 90 id. 526, 530; Cooley Const. Lim. [5th ed.] p. 493.)

The order should be reversed, with twenty dollars costs and disbursements, and the motion for an injunction *pendente lite* granted.

McAvoy and O'Malley, JJ., concur; Martin, P. J., and Merrell, J., dissent and vote for affirmance.

Merrell, J. (dissenting). Plaintiff is the lessee of the Republic Theatre on West Forty-second street, New York city, and demands an injunction restraining the defendant from suspending its license and from interfering with the presentation of performances and from carrying into effect a decision of suspension effective Saturday night, September 14, 1935. The license in question granted plaintiff permission to maintain and operate a burlesque theatre at 209 West Forty-second street, and was issued on June 4, 1935. Prior to issuing the license the plaintiff signed an agreement to abide by the departmental rules and regulations relative to theatres, promulgated on November 19, 1934. Among those rules and regulations to which plaintiff agreed to abide there were the following:

" 2. No female shall be permitted on the stage in any scene, sketch or act with breasts or the lower part of the torso uncovered, or so thinly covered or draped as to appear uncovered.

" 3. Scenes, sketches or acts wherein a female appears originally fully or partly clothed and gradually disrobes shall conform to the above rules.

" 4. No vulgar, obscene or indecent language offensive to decency or propriety shall be indulged in by performers in any scene, sketch, act or play."

After the license was granted the defendant received protests from a large number of persons and organizations setting forth that the performances given by plaintiff at said theatre were lewd, lascivious and obscene, and tended to create disorder, immorality and in general to destroy the morals of the theatre's patrons. As early as June 27, 1935, the defendant received a report from the police commissioner complaining of the conditions found in the theatre. Thereupon the defendant proceeded, upon notice to the plaintiff, to hear and determine the complaints under chapter 14, article 1, section 5, of the Code of Ordinances, which, so far as material, reads as follows:

" § 5. Suspension and revocation of licenses. The commissioner of licenses is empowered to hear and determine complaints against licensees, and to suspend or revoke any license or permit issued by him, under any provision of this ordinance."

Hearings were held by the commissioner of licenses on July 12, 1935, and August 21, 1935. At each of these hearings representatives of the plaintiff were present and testimony was taken at said hearings which fully sustained the complaints which had been made and which the plaintiff and its witnesses in nowise contradicted. At the close of the hearing on August twenty-first, plaintiff's secretary made the following comment:

" Mr. Minsky: Although I agree wholly or in part with the observations of this performance as reported by the Inspector, I do not agree with some of the conclusions formed by the Inspector in relation to certain scenes or acts performed on the stage.

" Mr. Moss: I do not think there are any conclusions. This man made a very competent report, and it is exactly as it was performed as he saw it. Is there anything else you want to say now? (No response.) "

Decision was reserved by the commissioner, and a week later, it still appearing that plaintiff was violating the rules by producing an indecent show, on September 13, 1935, the defendant notified the plaintiff of his decision, as follows:

" Gentlemen: I hereby notify you that after due and careful consideration of the evidence at hearing before me July 12, and August 21, 1935, on the complaint of the Police Department, and Department of Licenses, theatrical license issued to you for the

above premises has been suspended to take effect at the close of business Saturday night, September 14, 1935.

" Please see that your theatre is not operated while this suspension remains in force."

Immediately, on September fourteenth, the plaintiff brought the present action to enjoin the defendant, and on the same day procured an order to show cause why the defendant should not be restrained from suspending the license which had been issued to the plaintiff *pendente lite*, with a stay, returnable September 17, 1935. This motion came on to be heard at Special Term of the Supreme Court on September 26, 1935, and on October 29, 1935, the motion was denied but the stay was permitted to stand until the determination of the appeal to this court.

There is no question, from an examination of the exhibits in this case, and in particular Exhibit E, that the so-called " entertainment " was of a lewd, disreputable and obscene character, and such as never should have been permitted to occur in the city of New York. On denying the plaintiff's motion for a temporary injunction, the learned justice presiding at Special Term wrote a rather extended opinion stating that the only issue presented was one of law, as to whether the commissioner of licenses has the power to suspend or revoke a theatre license. The court stated in his opinion: " Plaintiff contends the commissioner has no such power until after a conviction under section 1140-a of the Penal Law. The defendant relies on chapter 14, article 1, section 5, of the Code of Ordinances." The first sentence of section 5 of the Code of Ordinances, above referred to, is fully hereinbefore set forth, and would seem to leave no doubt as to the power of the commissioner to hear and determine complaints against licensees and to suspend or revoke any license issued by him under any provision of the ordinance.

The appellant relies largely upon the decision made in 1922 by this court, and affirmed by the Court of Appeals by a four to three vote (*Woods Theatre Co., Inc.,* v. *Gilchrist,* 200 App. Div. 128; affd., 233 N. Y. 616). In the opinion of the justice below (not reported) the *Woods* case is discussed in the following language:

" In the *Woods* case, chapter 14, article 1, section 5 (*supra*), was neither relied on by the commissioner nor urged by him as the basis of his authority; and, what is more important and indeed decisive of this motion, since the decision in the *Woods* case (May, 1922) there has been added to said chapter 14 of the Code of Ordinances an amendment under section 1 (the section that provides in what specific instances under that article licenses are required). That amendment, effective June 16, 1931, so far as is relevant, is as follows:

" ' *No place of public amusement* \* \* \* *not heretofore speci-fied*, shall be operated without a license issued by the commissioner of licenses upon payment of such fees as may be prescribed by him *and upon such terms and conditions as [the] said commissioner of licenses deems necessary for proper regulation and good order* ' (C. O., pars. 305, 306, amended by ordinance effective June 16, 1931).

" If any doubt existed as to the commissioner's legal power and authority, that amendment on the facts in this case disposes of it; for by express enactment of the legislative body having the authority to enact ordinances that have the force of law, all places of ' public amusement ' that had not been specifically mentioned in section 1, article 1, were expressly brought within the provisions of chapter 14, article 1, of the Code, and therefore within the provisions of section 5 thereof, which, as indicated above, expressly and in unambiguous language empowers the Commissioner to hear and determine complaints against licensees and ' to suspend or revoke any license \* \* \* issued by him under any provision of this ordinance.' " (Italics are the writer's.)

It also appeared, as stated in said opinion, that in the *Woods* case no hearings were held, and that the same was clearly distinguishable from the present case.

Showing the inapplicability of the *Woods* case to the question here presented, I think, under the Code of Ordinances now in force, there is no question but that the commissioner of licenses has the power to issue a license upon the terms exacted, which were as stated in the items 2, 3 and 4 of the rules hereinbefore quoted, and that after a hearing given for a violation thereof or other just cause, the commissioner clearly has power to suspend and revoke the license. The jurisdiction of the commissioner of licenses, as stated in section 641 of the Greater New York Charter (Laws of 1901, chap. 466, added by Laws of 1914, chap. 475, as amd. by Laws of 1917, chap. 618), so far as material here, reads as follows:

" § 641. The commissioner of licenses shall have cognizance and control of the granting \* \* \* suspending and cancelling:

" 1. Of all licenses \* \* \* now issued by the mayor \* \* \*.

" 2. Of all licenses \* \* \* now issued by the bureau of licenses \* \* \*.

" 3. Of all licenses issued under \* \* \* article eleven of the General Business Law \* \* \*.

" 4. Of all licenses in relation to theatres and concerts now issued under \* \* \* sections fourteen hundred and seventy-three, fourteen hundred and seventy-four, fourteen hundred and seventy-five and fourteen hundred and eighty-three of the \* \* \* charter, by the police commissioner.

" 5. Of all licenses in relation to dance halls * * * in pursuance of sections fourteen hundred and ninety and fourteen hundred and ninety-four* of the * * * charter * * *.

" 6. Of all licenses issued under * * * article five of the General Business Law."

The sections above referred to in subdivision 4 providing for licenses in relation to theatres are preceded by section 1472, which declares that it shall not be lawful to exhibit any entertainment of the stage without a license, and, so far as material, read as follows:

" § 1473. The commissioner of licenses is hereby authorized * * * to grant such licenses * * *; and every manager * * * who shall * * * allow any such exhibition * * * without such license * * * shall be subject to a penalty of one hundred dollars * * *

" § 1474. The said commissioner of licenses is hereby authorized to grant licenses * * * for any term less than one year. * * *

" § 1475. Upon granting every such license * * * the said commissioner shall receive * * * the amount payable for said license * * * which * * * shall be paid over to the comptroller. * * *

" § 1483. It shall not be lawful to sell or furnish any wine, beer or strong or spirituous liquors * * * except * * *."

There is also in the same title section 1476 (subsequently transferred to section 4 of article 1 of chapter 3 of the Code of Ordinances) relating to revocation of licenses in relation to theatres, which reads, so far as material, as follows:

" § 1476. Any license provided for by the preceding sections may be revoked and annulled by any judge or justice of any court of record * * * upon proof of a violation of any of the provisions of this title; such proof shall be taken * * * upon notice of not less than two days to show cause * * *; said judge * * * shall hear the proofs * * * and determine same summarily; and no appeal shall be taken."

Under the foregoing charter provisions the case of *Woods Theatre Co., Inc.*, v. *Gilchrist* (*supra*) came before this court. In that case there was presented the question whether the commissioner of licenses had power to revoke a theatre license because of the production in that theatre of a play which in his judgment was an

---

*Sections 1488 to 1494, inclusive, are superseded by local law No. 12 of New York Local Laws of 1931, in so far as such sections are in conflict therewith. (See Ash's N. Y. Charter [2d Supp.], p. 164.) Under such local law (§ 4), the license is to be issued by the police commissioner rather than by the commissioner of licenses. (See Ash's N. Y. Charter [2d Supp.], p. 196.)—[REP.

improper play for exhibition. The revocation had been without a hearing, and this court held that in view of section 1476 (*supra*) the commissioner had no such power. The case went to the Court of Appeals on the certified question: " Has ¡the commissioner of licenses of the city of New York power to revoke a license of a theatre where dramatic performances or other entertainments of the stage are exhibited? " As before stated, by a vote of four to three, the Court of Appeals, without any opinion, answered this certified ˋquestion in the negative. At the time of that decision, 1922, the provisions of sections 1472, 1473 and 1476 of the charter had been transferred to chapter 3, article 1, of the Code of Ordinances. Chapter 3 is entitled " Amusements and Exhibitions." There is under that chapter no provision for the revocation of a license except that in section 4, the former section 1476 of the charter. The subject of licenses, however, is particularly treated in chapter 14 of the Code of Ordinances. As to the distinction between these two chapters, the learned justice below commented in the following language: " The suggestion that the jurisdiction of this court in respect to the revocation of amusement licenses is restricted by chapter 3, article 1, section 4, of the Code of Ordinances, to the specific violations stated * * * is deemed without merit, since therein original jurisdiction * * * is given to judges * * * after a hearing to revoke amusement licenses without the right of appeal for the specific violations * * * which generally relate to fire hazards and safety regulations. The authority to hear and determine * * , * applications to revoke amusement licenses for other grounds * * * is now specifically given to the Commissioner of Licenses * * * by the 1931 amendment to chapter 14, article 1, section 1, and jurisdiction of the Supreme Court by a plenary suit for injunctive or other appropriate relief to review, modify or correct the determination of the license commissioner is in no way impaired or affected."

Section 1, above hereinbefore mentioned, as amended in 1931 and in 1934, reads as follows:

" § 1. When required.

" In addition to the businesses, places, trades, occupations and things required to be licensed by statute or by other chapters of this code, the following must be duly licensed as herein provided, namely: * * * [Various things not including theatres].

" No person shall engage in, or carry on any business, trade or occupation * * * specified in this section without a license therefor.

" No place of public amusement * * * not heretofore specified, shall be operated without a license issued by the commis-

sioner of licenses upon payment of such fee as may be prescribed by him, and upon such terms and conditions as the said commissioner of licenses deems necessary for proper regulation and good order."

The last paragraph of the section above quoted seems to be the meat of this controversy, and fully justified the commissioner of licenses in revoking the license to plaintiff, if any doubt theretofore existed. The last clause above quoted constituted the amendment which became law in 1934, long after the decision in the *Woods* case. Thus, by express enactment, all places of public amusement were expressly brought within the provisions of article 1 of chapter 14 of the Code of Ordinances, and, therefore, within the provisions of section 5 thereof hereinbefore quoted.

I think the commissioner of licenses, under the law, clearly had ample authority for revoking the license issued to plaintiff when the commissioner was able to see that the licensee had violated the conditions upon which the license was granted and when said licensee persisted in permitting an indecent, vulgar and obscene entertainment to be presented at said theatre.

The order denying temporary injunctive relief to the plaintiff should be affirmed, with twenty dollars costs and disbursements to the defendant-respondent against the plaintiff-appellant.

MARTIN, P. J., concurs.

Order reversed, with twenty dollars costs and disbursements, and motion granted. Settle order on notice.